## CHARLESTON.

McClain Adm'r *v.* Davis.

Submitted June 9, 1892.—Decided December 17, 1892.

Judgment—Entry Nunc Pro Tunc—Validity.

On the 8th day of April, 1886, two justices presided at a trial, at which a verdict was rendered, but no judgment thereon was entered. Subsequently, nearly two years afterwards, the same justices without notice met and undertook to enter a judgment upon the verdict *nunc pro tunc.* *Held,* such entry *nunc pro tunc* was unauthorized and illegal, and was properly treated by the Circuit Court as a nullity.

J. Bassell and S. D. Turner for plaintiff in error cited the following authorities:

Code, c. 50, ss. 114, 116; Free. Jdgmts. §§ 38, 56, 459, 53-4; Black Jdgmts. § 106, 126, 130, 135, 286-287; 12 Am. & Eng. Ency. Law, 59, 80, 466; Bar. Law Pr. (1st Ed.) 329; 1 Rob. Pr. (old) 285; 40 Am. Dec. 382; 77 Am. Dec. 450; 2 N. Y. 134; 44 N. Y. 377; 11 Me. 377; 2 Johns. 181; 41 Cal. 232; 2 Doug. (Mich.) 98; 11 Johns. 457; 7 Mich. 315; 2 Cold. 298; 4 W. Va. 180; 11 Wall. (U. S.) 268.

J. V. Blair for defendant in error cited the following authorities:

33 W. Va. 132; 45 Am. Dec. 448; 1 Rob. (Old) Pr. 585; 4 Munf. 466; 2 Wash. 216; 28 W. Va. 184; 31 W. Va. 364; 20 Am. St. Rep. 518; Code, c. 50, s. 169; 28 W. Va. 405; 31 W. Va. 370; Code, c. 50, s. 114; 3 Den. 73; 40 Am. Dec. 45; 1 Black. Com. 349; 20 Am. St. Rep. & notes, 518; 1 Ov. Rep. (Tenn.) 94; 1 Stark. Ev. 252 and notes; 8 So. Rep. 103; 90 Ala. 480; 43 Mo. App. 456; 13 N. Y. 166; 59 Hun 117; 15 N. Y. 442; Id. 470; 48 N. W. 625; 19 Wend. 371; 4 Ohio St. 594; 18 Ohio St. 544; 25 Wis. 539; 12 Am. & Eng. Ency. 458 and note 5, and 466 to 474 and notes; 47 N. W. 1015; 1 Black Jdgmts., §§ 132, 135 and 115; N. Y. Code, Civ. Pro. § 3015; 46 Hun 492; 2 N. Y. 358; 6 S. E. 277; 35 W. Va. 333; 12 O. St. Rep. 530; 7 D. C. 264; 12 Am. & Eng. Ency. p. 397 and note 7.

LUCAS, PRESIDENT :

A. J. Lowther brought an action before a justice in Doddridge county, and a verdict of the jury was rendered in favor of the plaintiff on the 8th of April, 1886, for one hundred and eighty four dollars. No judgment was entered upon this verdict. The docket showed, however, that an execution had issued at the date of the verdict. On the 31st of December, 1887, a renewed execution was issued. This execution recited that a judgment had been rendered by W. E. NUTTER, J. P., and L. F. RANDOLPH, J. P., on the 8th day of April, 1886. On the 17th of January, 1888, the defendant, Davis, by his counsel, moved before the justice to quash the execution, which motion the justice denied, and the defendant appealed. The case was tried by the Circuit Court on this appeal and was there dismissed, upon the ground that the appeal was improvidently awarded. Thereupon a further appeal from the decision of the Circuit Court refusing to quash the execution was prosecuted to this Court, and here the judgment of the Circuit Court, overruling the motion to quash the execution, was reversed, and the case remanded.

Point 1 of the syllabus of the case as tried here was "An execution purporting to be issued upon the judgment of a justice, where there is in fact no such judgment, but simply the verdict of the jury, is void, and the justice should quash such execution upon notice and motion." *Lowther* v. *Davis*, 33 W. Va. 132 (10 S. E. Rep. 20).

The judgment of this Court proceeded upon the ground that there was no such judgment as the one recited by such execution. The concluding paragraph of the opinion of this Court upon this branch of the case is as follows: "These provisions" (that is, the provisions of the Code previously cited) "clearly show that no execution can be issued by the justice until there is a judgment rendered, upon which it can be issued. It is clear that no execution can be issued on the verdict of a jury, but that there must be a judgment entered on the verdict by the justice to authorize the execution; and unless there is such judgment, the execution is void and should be quashed on a proper motion by the defendant therein."

While this appeal was pending, viz., on the 20th of March, 1888, the two justices who tried the case originally met together, and entered the following order: "*A. J. Lowther* v. *W. H. H. Davis.* March 20th, 1888. We, W. E. Nutter and L. F. Randolph, justices of the peace, who presided at the trial of this cause on, to wit, the 8th day of April, 1886, in which trial a verdict was rendered by the jury in favor of the plaintiff, having failed to enter judgment as prescribed by law, do enter the judgment now for that time in the following words and figures, to wit: It is therefore considered by the court that A. J. Lowther recover from W. H. H. Davis the sum of two hundred and twenty one dollars and ninety three cents, with interest from the 8th day of April, 1886, until paid, and his costs by him in this behalf expended, which is ascertained to be thirty two dollars and fifty cents ($32.50). Given under our hands this 20th day of March, 1888. W. E. Nutter, J. P.  L. F. Randolph, J. P."

The plaintiff afterwards died, and his administrator made a motion before the justice to revive the judgment in his name, and defendant opposed the motion, and the justice refused to revive; and on appeal to the Circuit Court that action was affirmed, and the administrator brings the case here on appeal.

In this action of the Circuit Court in refusing to revive this judgment we think there was no error, but that it was clearly right on several grounds.

In the *first* place the case may be regarded as a *res adjudicata*, this Court having in effect directed the execution to be quashed, upon the ground that no such judgment had been rendered or entered. It is true that the record now produced of an attempt on the part of the two justices to enter a judgment *nunc pro tunc* was not then before this Court; but the principle often announced is, that everything litigated on the former trial or which might and ought to have been litigated, is closed by the final adjudication here.  The attempt to enter a judgment *nunc pro tunc* might have been made before the execution issued which was here quashed; and the parties, having failed to make the attempt before bringing the case to this Court,

ought not to be permitted to do so after this Court had decided that no judgment had been rendered. Moreover, the language of this Court, as above quoted from the opinion, precluded the idea that the entry of a judgment within the time prescribed by the statute is not essential to its validity.

But, *secondly*, were it otherwise, the language of the Code (see section 114, c. 50) taken in connection with other provisions *in pari materia*, is too unequivocal to admit of misconstruction. Where the language is unambiguous, no ambiguity can be authorized by interpretation. Five or six sections of the Code, immediately succeeding section 114, show that the object of the legislature was to draw a marked distinction between the rendition of a judgment and its entry. When, therefore, in section 114, the legislature provides: "In other cases judgment shall be entered within twenty four hours (Sundays excepted) after the trial," it is taking unwarranted liberty with their language to say that when they used the word "entered" they meant "rendered;" or to hold that the judgment, if rendered, might be entered after the lapse of not only twenty four hours, but of two years after its rendition, as was attempted in this case. The question as to what constitutes the entry is an entirely different one. All that can be said upon that subject is that the very least required to give validity to the judgment is some written evidence contained in the papers or on the docket that it has been rendered, and this writing must be made within the twenty fours (Sundays excepted) as prescribed by the statute.

In the *third* place, this entry of the judgment made by these justices seems to have been done upon their own mere motion, and without any notice whatever to the defendant in the court below. It is a well-established rule that, if they regarded the omission of the entry as a mere clerical error, they could only correct such error upon reasonable notice to the other party. This is the well-established practice in the Circuit Courts, and in this Court. See Code, c 134, ss. 1, 5. In any point of view, we must regard this action of the justices as absolutely without warrant of law and entirely null and void. It is well known that the justice's court has no regular term, and if his proceedings are

to be carried in his own breast for years, and then entered in a case no longer pending, his docket and proceedings would soon be in a chaotic condition, and absolutely useless for any practical purpose.

In the case of *Powell* v. *Com.*, 11 Gratt. 822, in construing the power of the court over a judgment rendered at a previous term, and the power of amendment of judgments and decrees by the judge in vacation after the adjournment of the term, it was said: "It was intended to authorize amendments in support of a judgment in cases in which there was something in the record by which they could safely be made: It could not have been intended to authorize an amendment to be made upon the individual recollection of the judge or by proof *aliunde.*"

So in regard to the correction of clerical errors generally, Mr. Black thus lays down the rule: "That a court has a right at a term subsequent to one, at which a judgment is rendered, to correct by an order *nunc pro tunc* a clerical error or omission in the original entry, is indisputable. The error, whether of omission or of commission, must appear from the record of the proceedings in which the entry of judgment is made." 1 Black, Judgm. § 131.

In *Halley's Adm'r* v. *Baird*, 1 Hen. & M. 24, it was held that the "district court has no power or jurisdiction to reverse, alter or amend a judgment given at a former term of the said court which had been entered on the order-book, and signed by a judge in open court." Upon the other hand, in *Shelton* v. *Welsh*, 7 Leigh, 175, it was held that a clerical error might be corrected at a subsequent term.

In the present case, if it were conceded that a justice of the peace could at any time enter a judgment *nunc pro tunc*, after the termination of his session at which it was rendered, he certainly could not do so except upon reasonable notice to the parties interested, nor could he at any time do so from his own recollection of what had occurred, but would have to rely exclusively upon some sufficient evidence appearing in the record or papers in the case, showing that such a judgment had been rendered.

We think it quite evident, therefore, that in the present case the justices acted without warrant of law, in excess of

their jurisdiction, and that the action of the Circuit Court in refusing to renew the pretended judgment was correct, and must be affirmed.

BRANNON, JUDGE, (*dissenting.*)

A. J. Lowther brought an action before a justice in Doddridge county, and a verdict of a jury was rendered in favor of the plaintiff for one hundred and eighty four dollars. No entry of a judgment was made in the docket. The docket shows that an execution issued on the date of the verdict. On December 31, 1887, another execution issued, which by the final action of this Court was quashed. *Lowther* v. *Davis*, 33 W. Va. 132 (10 S. E. Rep. 20). This execution recites that judgment had been rendered April 8, 1886, for the debt.

On 20th March, 1888, the two justices who tried the case entered in the docket an order reciting that they had presided at the trial on the 8th day of April, 1886, in which a verdict had been rendered by a jury in favor of the plaintiff and, having failed to enter judgment, they entered a formal judgment *nunc pro tunc* in accordance with the verdict. The plaintiff afterwards died, and his administrator made a motion before the justice to revive the judgment in his name, and the defendant opposed the motion, and the justice refused to revive the judgment, and upon appeal to the Circuit Court that court also refused to revive it, and the administrator brings the case here.

The question is: Was there any judgment to be revived? Is the judgment entered March 20, 1888, nearly two years after the rendition of the verdict, void because it was not entered within twenty four hours after the trial, as required by Code, s. 114, c. 50? If void because the jurisdiction of the justices had lapsed, there can not be a revival; but if not void, there can be.

Were it an open question, I should be inclined to say that the statute is directory, made for the benefit of the plaintiff, not the defendant; that a justice's court would fall under the general principle applicable to all courts—that is, that the court once in possession of the cause can go on until final judgment, the verdict being merely an interlocutory

occurrence while the proceeding is going on, and standing good until judgment on it. Otherwise a costly trial comes to naught, merely because the justice takes a little too much time to consider.

But there have been too many decisions in states, where similar statutes prevail, to allow this construction. They hold that judgment must be rendered within the prescribed time. Our statute says the judgment must be "entered" within the time. What does the word "entered" here mean? It means that judgment must be rendered—pronounced—within the time, but not necessarily entered in the docket within that time.

In *Conwell* v. *Kuykendall*, 29 Kan. 707, though the section of the statute required judgment within four days, the court said, to obviate difficulty, the word "entered" should be interpreted as "rendered;" that when the justice formed his mind, and announced it, that was judgment, while recording it afterwards would do; that it was the almost universal practice in all courts to announce judgments and afterwards record them.

That the word "entered," in section 114, means "rendered," is shown from the fact that the justice is to ascertain balance after credits, and enter judgment, thus showing that it means the formation and decision of the mind as to the legal result of the case; and it is shown by the further important fact that the command to enter certain things in the docket, among them the judgment, is to be found in other sections (178 and 179). The judgment of the justice shall be stated; that is, the one already entered or announced.

What is a judgment? Upon such a question as that involved in this case, we must have a correct conception of what it is. The docket entry is not the judgment, but only evidence that a judgment was rendered. Judgment is what is ordered and considered; not the mere entry of what is ordered and considered. We sometimes speak of the record entry as the judgment, but it is no more the judgment, accurately speaking, than a note for money is the money or debt itself. *Hickey* v. *Hinsdale*, 8 Mich. 267. A judgment is the "decision or sentence

of the law, pronounced by a court or other competent tribunal, upon the matter contained in the record." 3 Black. Comm. 395; Jac. Law Dict.; Freem. Judgm. s. 2. When, after the facts are found, the court pronounces the decision on them, that is the judgment; that is the judicial act—the act of the court as a court speaking the sentence of the law—whereas the entering it in the roll, the docket, or the order or judgment book, call it by whatever name, is an act of different nature, a clerical or ministerial act, one to constitute merely a memorial to attest that the judicial act of pronouncing judgment was in fact done.

In view of these principles a justice must pronounce his judgment within twenty four hours after the trial; but if he does so, his failure to enter it in his docket within that time will by no means rob the party of his judgment. He could, weeks later, compel the justice by *mandamus* to enter it. At common-law magistrates after pronouncing judgments have been justified in entering up the written record even after commitments to prison under them, and after proceedings by *certiorari* or other process had been commenced to impugn them for informality. *Massey* v. *Johnson*, 12 East, 67, 81, 82. In *Gray* v. *Cookson*, 16 East, 13, the record was drawn up six months after judgment rendered. See *King* v. *Barker*, 1 East, 186. In *Hall* v. *Tuttle*, 6 Hill, 38 (40 Am. Dec. 383) the court, of a justice's judgment, said: "This shows the formal entry of the judgment to be quite an unimportant matter. Where it is necessary for the purpose of evidence, it may be made at any time."

Suppose a justice, after a verdict, announce judgment thereon, but omits to record it in his docket. You can compel him to do so by *mandamus*. You show the docket and verdict, and prove his rendition of judgment. You need not have record evidence to prove his announcement of judgment. This is the rule as to proceedings of inferior courts. 2 Freem. Judgm. § 410. It is otherwise as to courts of record. The law fixes no limitation for such entry or for a *nunc pro tunc* entry. 2 Freem. Judgm. § 56. Suppose the justices in this case had entered a memorandum of judgment on the summons. That would not be a docket entry. No law requires them to make such memorandum,

It, however, would be used as evidence of a judgment, and from it judgment in the docket could be afterwards entered.

But we are acting under the statute. The court in the case just cited, having spoken of the law independently of the statute, then adverted to the New York Statute requiring judgment to be forthwith rendered and entered in the docket, and held the same principle, saying the judgment must be rendered forthwith; but not so with the docket entry, notwithstanding the statute as to both declared that it must be done forthwith. The reason given was that the one act was judicial, the other merely ministerial. The court held the statute in reference to the docket, specifying various things which it must show, to be directory, and the acts to be performed by the justice in reference thereto ministerial. These principles are sustained by authority in New York, whence our statute came, and other states where similar ones prevail. *Walrod* v. *Shular*, 2 N. Y. 134; *Fish* v. *Emerson*, 44 N. Y. 376; opinion, *Sibley* v. *Howard*, 3 Denio, 72 (45 Am. Dec. 448 and note); opinion, *McNamara* v. *Spees*, 25 Wis. 539; *Matthews* v. *Houghton*, 11 Me. 377; *Lynch* v. *Kelly*, 41 Cal. 234; Freem. Judgm. §§ 53, 53*a*; *Digges* v. *Dunn*, 1 Munf. 56; *Shaddrack* v, *Woolfolk*, 32 Gratt. 707, 713; 1 Black, Judgm. § 106.

In Wisconsin, where the statute requiring judgment forthwith exists, and where its construction is more rigid than elsewhere, it has been twice held that "if judgment is rendered at the proper time (by being audibly pronounced so that it may be heard by the parties and others present) that is sufficient, and the justice may subsequently enter it on his docket, and tax the costs." *Wearne* v. *Smith*, 32 Wis. 412; *Kleinsteuber* v: *Schumacher*, 35 Wis. 608.

The cases of *Sibley* v. *Howard*, 45 Amer. Dec. 448; *Watson* v. *Davis*, 19 Wend. 371, and *McNamara* v. *Spees*, 25 Wis. 539, were cases where not only the docket entry, but the judgment—the decision—was not announced till after the time limited.

It must not be thought, because in ordinary courts judicial acts are performed by a judge, but the ministerial ones by a clerk, that in the case of a justice, who performs both,

all his acts are judicial. The nature of the act is tested by its nature, not by the accident of the person performing it. In *Hickey* v. *Hinsdale, supra,* the court said the acts of the justice in making docket entries were ministerial, like those of a clerk.

I repeat then, that, if a justice does announce judgment within twenty four hours after verdict, the judgment is not void because the entry in the docket is not made within that time. It is, however, important that justices who perform such important functions in the administration of justice should promptly enter their proceedings in the docket, just as much as it is that judges of superior courts should record their action, and they are culpable for not so doing.

But now comes another question—the only question which has given me any serious concern. The judgment shows on its face that it was entered long after the date of the verdict, not purporting to have been done while the proceeding was *in fieri,* but is one entered *nunc pro tunc;* and it may be that it is not itself conclusive of the fact that judgment was pronounced within twenty four hours after the trial, and that it is necessary to ascertain by other evidence that it was then rendered, where it purports to be *nunc pro tunc.*

Our statute (Code, c. 50, s. 182) makes the docket evidence of a judgment, but it does not make it the sole evidence, for it may be proven by entries or memoranda among the papers required by law to be kept, even by oral evidence of the justice. 1 Greenl. Ev. § 513; Freem. Judgm. § 410, note; 40 Amer. Dec. 386. *In Re Wight,* 134 U. S. 136 (10 Sup. Ct. Rep. 487) the United States Supreme Court held that a *nunc pro tunc* order could be made on the recollection of the judge that an order had been made.

The justices making this entry of judgment are the same who received the verdict. It is a circumstance to show such judgment. I hardly think this case ought to be regarded as a judgment *nunc pro tunc,* but simply as the performance of a ministerial act of entry of judgment announced at date of verdict, on the knowledge of the jus-

tices, nothing appearing tending to show that judgment was not so announced; but I am treating it, in the strongest light against its validity, as a judgment *nunc pro tunc*, holding that there is sufficient evidence to warrant such judgment, and, if there is, certainly such *data* would warrant the mere clerical act of entry in the docket. Here the docket shows that, on the date of the verdict, execution issued. We can read this entry, and could read the execution, were it in the record, but we are to presume it followed the law, reciting the judgment, date, parties, and amount, as section 135, c. 50, requires. The docket entries and verdict give us certainty as to parties, amount, dates, *etc.*, necessary for judgment. The note of the execution follows right after the verdict in the docket. Is it not cogent evidence that judgment had been given on the verdict? For law of *nunc pro tunc* judgment see opinion *Mitchell* v. *Overman*, 103 U. S. 64. Upon such *data* I think a judgment could be entered at any time.

Here was a verdict, and judgment would follow as a matter of course, in the absence of motion to set it aside, and we would perhaps presume its rendition; but the docket shows the issue of an execution the very day of the verdict. Is not that the strongest kind of a circumstance to show that judgment had been rendered, in the absence of a *scintilla* of evidence to negative it? If the facts shown by the docket "are such as to reasonably and fairly carry conviction that a judgment was in fact rendered, this is sufficient." *Witten* v. *Robison*, 31 Mo. App. 525. In the face of this verdict and execution, how can we reasonably escape the conviction that judgment upon the verdict was in fact rendered?

The books show that everywhere courts struggle to overlook irregularities in the proceedings of justices, in order to further justice; but here the struggle seems to be to the reverse—to give undue weight to an irregularity or inadvertent omission.

I can not consent that this party shall lose his debt on what is the veriest technicality, especially as I see the justice of the case in this line. It requires no struggle to support the plaintiff's debt, as the authorities clearly uphold it.

I hold that the judgment is neither void nor irregular. If the Supreme Court of California could say, in a case just like this, where a verdict was rendered by a justice, and he omitted to enter judgment, and an execution issued on it, the entry of judgment was merely clerical duty, and the justice could be compelled to make it, and that the execution should not be quashed, much more can we use that execution merely as evidence to show that judgment was in fact announced, and to justify its subsequent entry on the docket. *Lynch* v. *Kelly*, 41 Cal. 232.

Thus we do not have to decide whether, where it appears that both the rendering and the entry in the docket of a judgment by a justice took place after the time fixed therefor by statute, the judgment would be void, or merely irregular and reversible on appeal. In some States, especially Wisconsin, it is held void in several decisions ; but the judge delivering the opinion in *Wearne* v. *Smith*, 32 Wis. 414, expressed himself dissatisfied with those decisions. In *Watson* v. *Davis*, 19 Wend. 371, which is urged upon us as authority to hold this judgment void, it is held that it is " erroneous," and subject to reversal. In *Martin* v. *Pifer*, 96 Ind. 245, and *Stillman* v. *McConnell*, 36 Kan. 398 (13 Pac. Rep. 571) such judgments were held not void, but erroneous ; and in *Robinson* v. *Kious*, 4 Ohio St. 593, Judge Thurman said the failure to render judgments within time might not make them void, but only irregular and reversible.

Nothing is presumed in favor of the jurisdiction of inferior courts, but when once jurisdiction of the cause and parties is established, as is clearly the case here, courts should be averse to holding mere missteps in the proceedings, mere irregularities, simple nullities, because to do so destroys rights of parties, and the maxim is that it is better that serious proceedings shall have force than fail.

If, then, a judgment rendered and entered after the time fixed by law be not void, but simply erroneous, as I think it would be at worst, it could be reversed only by appeal ; and as the motion to revive the judgment in this case stands as a *scire facias* in courts of record under the common law, mere irregularity could not avail as a defence to a writ of

*scire facias.* Fost. Sci. Fa. 27; 12 Amer. & Eng. Enc. Law, 150*i*; 1 Black, Judgm. 496.

Hence I am of opinion that the court erred in refusing to revive the judgment, and its judgment refusing to do so ought to be reversed, and judgment reviving same here entered. When this case was here before, the judgment was not in the record. The court said the evidence was not enough to justify an execution. Here we use that evidence for another purpose, to determine merely whether it is sufficient to justify judgment *nunc pro tunc.* The former decision is not *res adjudicata* upon this question. It merely held there was then no judgment to support an execution. Did it hold that there never could afterwards be a judgment entered? Certainly not. Did it hold that this judgment is void, when it was not in existence then? Certainly not.

This case does not involve the question of amendment under the statute—that is, where a judgment has been entered, and it is desired to correct it; whereas here no judgment at all had been entered. If even notice of the judgment *nunc pro tunc* were required, and I do not think it was, as no new evidence was introduced, (Freem. Judgm. § 64) yet that would render it only irregular, not void on *scire facias.*

AFFIRMED.