# CHARLESTON.

## GRIFFIN v. HAUGHT.

Submitted June 11, 1898—Decided Dec. 3, 1898.  ☐

1. JUDGMENT—*Validity of Judgment—Justice of the Peace.*
   A judgment rendered by two justices sitting together is not void for that reason.  (p. 464).

2. JUDGMENT—*Validity of Judgment—Justice of the Peace.*
   When two justices sit together at the trial of a case, and no objection is made thereto at the time, the validity of the judgment cannot afterwards be questioned on that account.  (p. 464).

3. RECORD--*Pleading—Justice of the Peace.*
   When there is no note in the record of the filing of complaint

or answer in an action originating before a justice, but there is copied into the record both a complaint by the plaintiff and an answer by the defendant signed by them respectively, with which the evidence of the parties adduced on the trial is entirely consistent, and the record shows there was a full and fair trial, the court will presume that the pleadings were so made up. (p. 465).

Error to Circuit Court, Doddridge County.

Action by H. C. Griffin, assignee of M. Chapman, against M. L. Haught. Judgment for plaintiff, and on appeal to circuit court judgment was again rendered for plaintiff and on the appeal bond. Defendant brings error.

*Affirmed.*

J. V. BLAIR, for plaintiff in error.

G. W. FARR, for defendant in error.

McWHORTER, JUDGE:

On the 20th of October, 1893, H. C. Griffin, assignee of M. Chapman, sued out a summons before C. A. Trough, justice of Doddridge County, against M. L. Haught, returnable November 7, 1893, at which time the parties appeared, and the defendant filed his affidavit for a continuance, which was granted until November 14, 1893, on which last-mentioned day (T. J. Haskins sitting with C. A. Trough, justice) the parties appeared by their attorneys, and the defendant moved to quash the summons in the case for irregularities, which motion was overruled, and the case put on trial; and, the evidence being heard, judgment was rendered for the plaintiff for one hundred and forty-three dollars and fifty-five cents, and ten dollars and fifteen cents, costs of the action, from which judgment the defendant appealed to the circuit court of Doddridge County, and filed his bond in the penalty of three hundred dollars, with Harvey Smith as his surety. On the 28th of November, 1894, a jury was impaneled in said court, and, having heard the evidence, the jury, on the 29th of November, returned a verdict for the defendant in the sum of seven dollars, when the plaintiff moved the court to set aside the verdict of the jury, and grant him a new trial, because the verdict was contrary to the law and

the evidence, of which motion the court took time to consider; and afterwards, on the 27th day of November, 1895, the court sustained the motion on condition that plaintiff pay the costs of the former trial. On the 24th of November, 1896, another jury was impaneled, and, having heard the evidence and arguments of counsel, returned a verdict for plaintiff for one hundred and sixty-eight dollars and ninety-eight cents, when the defendant moved the court to set aside the verdict and grant him a new trial, because the verdict was contrary to the law and the evidence, of which motion the court took time to consider; and on the second day of December, 1896, the court overruled the motion, and entered judgment against said Haught, and Harvey Smith, his surety, on the appeal bond, to which action of the court the defendant excepted, and tendered three several bills of exception, which were signed and made a part of the record.

Defendant applied for, and obtained from this Court, a writ of error to said judgment, on the following assignments of error: (1) That the trial had on the 14th day of November, 1893, before C. A. Trough and T. J. Haskins, justices of the peace, was without authority of law; that jurisdiction of the case was then lost; that the said judgment of said justices was null and void, and the circuit court obtained no jurisdiction to hear and determine said action by trial, and the same should have been dismissed by said court. (2) That said circuit court erred, on the 27th day of November, 1895, in setting aside said verdict theretofore rendered in favor of said defendant. (3) The court erred in giving to the jury the instructions embraced in bill of exceptions No. 1, especially the last section thereof, which wholly ignores the answer or plea of defendant, alleging fraud and deception, and the evidence showing misrepresentation as to and suppression of the fact of payment of said oil-lease rental or forfeit money, and because said last clause conflicts with the other parts of the instruction, and had a tendency to confuse and mislead the jury. (4) The court erred in refusing to give the instruction asked for on behalf of the defendant, and set forth in the second bill of exceptions. The contract and deed show that said Haught was entitled to all the

yearly rental under said oil lease, except for forty-five days; and, if the contract had not so specifically fixed this, the statute does.    (5) The court erred in overruling said motion to set aside said verdict, and in rendering said judgment for one hundred and seventy-nine dollars and fourteen cents, with interest thereon at ten per cent. from the 24th day of November, 1896, until paid, and costs.

On the day the summons was returnable (November 7th), the defendant appeared, and moved for a continuance. On the 14th of November, when the case was called for trial, the defendant moved to quash the summons, for the the reason that it was addressed "to L. G. Duff, a special constable," and no appointment was noted in the docket, in compliance with sections 30 and 31, chapter 50, Code. The object of service of process is to bring the party into court; and the appearance to the action in any case for any other purpose than to take advantage of the defective execution or nonexecution of process places a defendant in precisely the situation in which he would be if process were executed upon him, and he thereby waives all objection to the defective execution or nonexecution of process upon him. *Mahany* v. *Kephart*, 15 W. Va., 609; *Bank of the Valley* v. *Bank of Berkeley*, 3 W. Va., 386; *Venable* v. *Coffman*, 2 W. Va., 310. The defendant's first appearance was on the return day, so that when he moved to quash, on the 14th of November, the day to which he had it continued, his motion could not be entertained, under the authorities above cited; but, if that had been his first appearance, it must have been a special appearance for the purpose only of quashing the summons or return, and it must be so stated in submitting his motion. *Layne* v. *Railroad Co.*, 35 W. Va., 438, (14 S. E. 123); *Blankenship* v. *Railway Co.*, 43 W. Va., 135, (27 S. E. 355).

It is insisted that Justice Trough lost jurisdiction because Justice T. J. Haskins sat with him at the trial. The Constitution Art. VIII. Sec. 28 provides that "the jur.3diction of justices of the peace shall extend throughout their county." It is admitted that Haskins was a justice of the peace of that county. He had concurrent jurisdiction with Justice Trough; and, in case it be for any reason improper for the justice issuing the summons

to try the case, another justice of the same county may attend and hear it in his place. Code, c. 50, ss. 14, 15. There is no statute providing that two justices may sit together in the same case, nor is there any prohibiting it. At most, it could be nothing more than an irregularity, which, unless taken advantage of at the time by motion or objection, must be held to be waived. A judgment rendered by two justices sitting together would not be void. The only case I find in which a judgment was rendered by two justices is that of *McClain* v. *Davis*, 37 W. Va., 330, (16 S. E. 629). While the question of the right of two justices to act together is not raised in the case, the fact of their joint action is referred to, not only in their opinions (there being a dissenting opinion), but in the syllabus of the case, without criticism on that point. It is no uncommon occurrence for the trial justice to invite a brother justice to sit with him at a trial. Having commenced an action properly within his jurisdiction, the same cannot be ousted by irregularities or errors, but the same may be corrected by appeal 1 Black Judgm. § 244, says: "In any case where the court has jurisdiction of the subject-matter of the action, and the parties are before it by due service of proper process, the jurisdiction is never ousted by the erroneous exercise of the power which it confers; and the judgment in the case, though it may be marked by error which will cause its reversal by a higher court, is not for that reason void," and cases there cited. Appellant cites Hutch, W. Va., Treatise, 12, and *Todd* v. *Gates*, 20 W. Va., 469, in support of his proposition,—want of jurisdiction, I fail to see wherein these authorities aid him. The Constitution and statutes prescribe the jurisdiction of justices. The amount here claimed is clearly within his jurisdiction. While the note sued on was originally of greater amount than would be within his jurisdiction, it was reduced by legitimate payments before suit was brought, and the action was for the balance, and it is not claimed that the amount was reduced by feigned credits.

Appellant claims that no pleading, either complaint or answer, were filed before the justice, and no oral pleading noted in the transcript. The first order made in the case by the circuit court, as appears from the record, was on

November 28, 1894, when parties to the action appeared by their attorneys, a jury was impaneled, and the case was tried without objection for want of pleadings, and a verdict rendered on the next day, November 29, 1894, for the defendant. The defendant raised no objection or question about the pleadings at any time while the case was pending in the circuit court. The record shows, by bills of exception taken by defendant after the last trial, that evidence was adduced by both plaintiff and defendant in support of their claims respectively, and "there was a full trial as if on plea and issue," *White* v. *Emblem*, 43 W. Va., 819, (28 S. E. 761). And, while the record fails to note the filing of either complaint or answer, there is copied into the record both a complaint and answer of plaintiff and defendant, signed by them respectively, with which the evidence of the parties adduced on the trial is entirely consistent; and, the record showing that there was a full and fair trial, the court will presume that the pleadings were so made up.

As to the second assignment, there is nothing in the record to show what evidence was given at the first trial in the circuit court, or what rulings of the court, if any, were to the prejudice of appellant; no exceptions being taken to enable this Court to see whether the verdict was contrary to the law and the evidence, or not. "In the absence of a bill of exceptions making the evidence of facts proved on the trial a part of the record, this Court will presume that the judgment of the court below was proper." *Todd* v. *Gates*, 20 W. Va., 464 (Syl. point 6).

Considering the third assignment, it is only the last clause of the instructions given by the court that is complained of, and which is as follows: "If the rental money was collected by Chapman before he sold his land to Haught, then the same did not pass to Haught, either by the contract of sale or assignment of the oil lease;" and viewed in the light of the contract between the parties, dated 22d of April, 1891, and of the deed of date August 18, 1891, and of the lease, let us see whether that clause of the instruction is bad or liable to objection. The said contract contains this provision: "It is further agreed that inasmuch as the land described in this article is leased for

oil and gas purposes to the parties known as Koen and Millan, that the said M. L. Haught accepts the obligations of said lease, and is to have all the profits and benefits resulting therefrom from the date of this article." And the deed for the land to Haught from Chapman dated 18th of August, 1891, and acknowledged on the 31st of the same month, contains the following provision: "It is further herein stipulated and agreed that said general warranty is not to operate as a warranty against a certain lease given on said land by the party of the first part for oil and gas purposes to the firm of Koen and Millan; but the party of the second part, M. L. Haught, accepts the obligations of said lease so given by the party of the first part, and is to have all the profits and benefits resulting from said lease from the 22d day of April, 1891, and the said party of the first part, Maxfield Chapman, is to have all benefits and profits of said lease up to April 22, 1891." The lease is dated March 8, 1890. Under its provisions, a test well was to be commenced on the premises within three months, and to be completed within nine months from its commencement; and, in case of failure to complete it within the time specified,—i. e. within one year from March 8, 1890,—the lessees were to pay to the lessor a yearly forfeit thereafter of one hundred and fifty dollars, and the lessor was to accept said amount as satisfactory compensation for such delay until said well should be completed. Now, it is insisted by the appellant, because of the use of the word "thereafter," the forfeiture did not begin until March 8, 1891; and it might so appear but for a further provision in the lease, immediately following the other, that "said forfeiture shall be deposited to the credit of the first party, at Merchants' National Bank of Clarksburg, West Virginia, or paid directly to said first party, and a failure to complete such well or pay said forfeit within the above-specified time therefor, or within the ninety days thereafter, shall render this lease null and void." Notwithstanding the language that "a yearly forfeit thereafter" of one hundred and fifty dollars should be paid, the first forfeit under the express provisions of the lease became due and payable at the end of twelve months from the date of the lease, and could only have been a for-

feit for that year, as there was yet no default for any subsequent time. The lease was for a term of five years from its date, and as much longer as oil and gas should be found in paying quantities, or the rental paid thereon. So, there were continuing benefits arising from said lease from its date, at the rate of one hundred and fifty dollars per year, which, under the express terms of the contract, and later under the deed of August 18, 1891 (which was accepted by appellant, and recorded by him November 20, 1891), were to go to the appellee up to April 22, 1891, and after that date to appellant.

The line of defense as disclosed by the testimony is strictly in harmony with the written contract of April 22d, the deed of August 18, 1891, and with the lease of March 8, 1890, except that the defendant claims the benefits of the lease prior to April 22, 1891, while the contract and the deeds say the benefit of the lease shall accrue to him from April 22, 1891. It is not claimed that appellee collected more than the first year's rental or forfeit, and that was, under the lease, payable before the parties began to negotiate for the sale and purchase of the land. The clause of the instruction excepted to is not inconsistent with the first part of the instruction, nor is it bad under the theory upon which the case seems to have been tried.

This also disposes of the fourth assignment,—that the court erred in refusing the instruction set out in the second bill of exceptions, as follows: "The jury are instructed that under the contract between M. Chapman and M. L. Haught, bearing date the 22d day of April, 1891, M. L. Haught was entitled to his proportional share of the yearly forfeit money of the $150, under the lease * * * dated March 8, 1890, and assigned to the South Penn Oil Company, the proportional share being as 45 days to Chapman and 320 days to Haught." This instruction was properly refused, because it is clearly in conflict with a proper construction of the lease as above set out, and was evidently so construed by the trial court. It follows that the court did not err in overruling the motion to set aside the verdict of the jury, and grant a new trial; and the judgment rendered by the court for one hundred and seventy-nine dollars and fourteen cents, with

interest at ten per cent. thereon until paid, and costs, was authorized by section 172, chapter 50, of the Code, and is affirmed.

*Affirmed.*