# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2024 Spring Term

_____

No. 22-ICA-220

_____

**FILED**

**March 14, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

THOMAS A. CUMMINGS, INDIVIDUALLY AND AS EXECUTOR OF THE
ESTATE OF CYNTHIA M. CUMMINGS,
Plaintiff Below, Petitioner,

v.

WARD J. PAINE, M.D., and BENJAMIN KLENNERT, P.A.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Monongalia County
Honorable Susan B. Tucker, Judge
Civil Action No. 20-C-86
AFFIRMED

_____

Submitted: January 9, 2024

Filed: March 14, 2024

Frank E. Simmerman, Jr., Esq.
Chad L. Taylor, Esq.
Frank E. Simmerman, III, Esq.
Simmerman Law Office, PLLC
Clarksburg, West Virginia

William Richard McCune, Jr., Esq.
William Richard McCune, Jr., PLLC
Martinsburg, West Virginia
Counsel for Petitioner

Patrick S. Casey, Esq.
Ryan P. Orth, Esq.
Casey & Chapman, PLLC
Wheeling, West Virginia
Counsel for Respondents

JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Judge:

Petitioner Thomas A. Cummings appeals the October 15, 2022, order of the Circuit Court of Monongalia County denying his *Motion to Preclude Defendants from Receiving a Pro Tanto Verdict Reduction in Amount of Plaintiff's Settlement with Nursing Home Defendants* and the circuit court's corresponding October 15, 2022, *Judgment Order*.[1] Mr. Cummings contends that the circuit court erred in its application of West Virginia Code § 55-7B-9 (2016) of the Medical Professional Liability Act ("MPLA") when it adjusted the jury's verdict by the amount of Mr. Cummings' pre-verdict settlements with 161 Bakers Ridge Road Operations, LLC, d/b/a Madison Center and Genesis Healthcare LLC (hereinafter "Nursing Home Defendants").[2] On appeal, Mr. Cummings argues that West Virginia Code § 55-7B-9 is inapplicable to the instant case as this statutory provision is ambiguous, internally inconsistent, and inconsistent with the language found in West Virginia Code § 55-7-13d (2016). As discussed more fully below, we find that West Virginia Code § 55-7B-9 is not ambiguous, not internally inconsistent, and controls over any arguably contrary language found within West Virginia Code § 55-7-13d. Accordingly, we affirm the circuit court's October 15, 2022, orders and remand this case for further proceedings consistent with this opinion.

---

[1]This adjusted amount includes an offset for Mr. Cummings' pre-verdict settlements and a further reduction in the verdict by the percentage of fault the jury assessed to Mr. Cummings.

[2]161 Bakers Ridge Road Operations, LLC, d/b/a Madison Center, and Genesis Healthcare, LLC are not parties to this appeal.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Cummings is the surviving spouse of Cindy Cummings and executor of Ms. Cummings' estate. In early March of 2019, Ms. Cummings underwent a total right hip replacement surgery at Ruby Memorial Hospital. Several days following her surgery, she was discharged to a short-term rehabilitation facility operated by the Nursing Home Defendants, where she was a resident until April of 2019. Following her hip replacement surgery, Ms. Cummings developed an infection and died on December 31, 2019.

On March 18, 2020, Mr. Cummings, individually and in his capacity as executor of Ms. Cummings' estate, filed the underlying medical malpractice action against Dr. Ward J. Paine, Benjamin Klennert (a Physician's Assistant ("P.A.")), and the Nursing Home Defendants. On August 12, 2021, a confidential settlement was reached between Mr. Cummings and the Nursing Home Defendants, which was approved by the circuit court following a February 17, 2022, hearing.

Mr. Cummings' remaining claims against Dr. Paine and P.A. Klennert were tried before a jury in late February and early March of 2022. On March 2, 2022, the jury returned a verdict finding that Dr. Paine and P.A. Klennert breached the accepted standard of care in their medical treatment of Ms. Cummings and that such breach proximately caused and/or contributed to the pre-death injuries and damages of Ms. Cummings. The jury further determined that Dr. Paine and P.A. Klennert were each 45% at fault, while Mr. Cummings was 10% at fault. Ultimately, the jury awarded $250,000 in total damages for

Cynthia Cummings' pre-death pain, suffering, loss of capacity to enjoy life, loss of dignity, and/or mental anguish/emotional distress. No other damages were awarded by the jury.[3]

On March 9, 2022, the parties each submitted proposed judgment orders for the circuit court's consideration. Dr. Paine and P.A. Klennert's proposed judgment order reduced the jury's verdict for the 10% fault of Mr. Cummings and further applied the pro tanto adjustment of the verdict required by West Virginia Code § 55-7B-9(d). However, Mr. Cummings' proposed *Judgment Order* reduced the jury's verdict only for his 10% fault. Thereafter, Mr. Cummings filed a *Motion to Preclude Defendants from Receiving a Pro Tanto Verdict Reduction in Amount of Plaintiff's Settlement with Nursing Home Defendants* and other post-trial motions which are not pertinent to this appeal. An initial hearing on these motions was held on August 22, 2022, and continued on September 7, 2022.

---

[3]At trial, in addition to the pre-death pain, suffering, loss of capacity to enjoy life, loss of dignity, and/or mental anguish/emotional damages that he was awarded, Mr. Cummings also sought, but was not awarded, the following additional damages: (1) medical expenses incurred for Ms. Cummings' care, treatment, hospitalizations, and nursing home charges; (2) Mr. Cummings' expenses to make home handicapped accessible for Ms. Cummings; (3) loss of household services as a result of Ms. Cummings' death; (4) loss of social security retirement benefits as a result of Ms. Cummings' death; (5) loss of retirement benefits as a result of Ms. Cummings' death; (6) loss of spousal consortium experienced by Mr. Cummings as a result of Ms. Cummings' death; (7) sorrow, mental anguish, and solace including loss of society, companionship, comfort, guidance, kindly services and advice of Ms. Cummings experienced by Ms. Cummings' beneficiaries as a result of her death, including her husband, children, and siblings; and (8) Ms. Cummings' reasonable funeral expenses.

By order dated October 15, 2022, the circuit court denied Mr. Cummings'
motions. Specifically, the court found that West Virginia Code § 55-7B-9 was clear and
unambiguous. The court interpreted the statute as written to provide a pro tanto reduction
of the jury's verdict as requested by Dr. Paine and P.A. Klennert. By separate order, also
dated October 15, 2022, the circuit court entered post-trial judgment in favor of Mr.
Cummings in the adjusted amount of $11,250, reducing the jury's verdict not only by the
10% fault which the jury assessed to Mr. Cummings, but also by Mr. Cummings' pre-
verdict settlement with the Nursing Home Defendants as required by West Virginia Code
§ 55-7B-9(d). It is from the October 15, 2022, orders that Mr. Cummings now appeals.

## II. STANDARD OF REVIEW

Our review of this matter is guided by the Supreme Court of Appeals of West
Virginia's ("SCAWV") recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*,
194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the
circuit court is clearly a question of law or involving an interpretation of a statute, we apply
a *de novo* standard of review." Likewise, in syllabus point one of *Appalachian Power Co.
v. State Tax Department of W. Va.,* 195 W. Va. 573, 466 S.E.2d 424 (1995), the SCAWV
held "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal
question subject to *de novo* review." With this standard in mind, we now consider the issues
raised on appeal.

4

## III.    DISCUSSION

On appeal, Mr. Cummings advances a single assignment of error with three subparts, each related to the circuit court's interpretation of West Virginia Code § 55-7B-9(d). We begin our analysis with a discussion of the MPLA, West Virginia Code §§ 55-7B-1 to -12.[4] Generally, with regard to the MPLA, the SCAWV has explained that

> examination of any portion of the MPLA is guided, at all times, by the recognition that the Act alters the 'common law and statutory rights of our citizens to compensation for injury and death[.]' W. Va. Code § 55-7B-1. In other words, by its own terms, the entire MPLA is an act designed to be in derogation of the common law.

*Phillips v. Larry's Drive-in Pharmacy, Inc.*, 220 W. Va. 484, 491, 647 S.E.2d 920, 927 (2007). Such reasoning supports the SCAWV's "long-standing maxim that '[s]tatutes in derogation of the common law are strictly construed.'" *Kellar v. James*, 63 W. Va. 139, 59 S.E. 939 (1907). In *Phillips*, the SCAWV concluded that

> because W. Va. Code § 55-7B-1 specifies that the MPLA was enacted to alter the 'common law . . . rights of our citizens to compensation for injury and death,' the MPLA is in derogation of the common law and its provisions must generally be given a narrow construction.

*Id*. at 492, 647 S.E.2d at 928.

In the first subpart of his assignment of error, Mr. Cummings argues that West Virginia Code § 55-7B-9 is ambiguous and internally inconsistent. Specifically, he contends that subsections (b) and (d) of West Virginia Code § 55-7B-9 are inconsistent

---

[4]There is no dispute that Mr. Cummings' instant claims were filed under the MPLA. *See* Appendix Record pages 12-26.

5

and, when considered together, ambiguous. We disagree and find no ambiguity and no inconsistency.

Generally, as to statutory construction, the SCAWV has held that "significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 1, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999). "It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W. Va. 579, 582, 251 S.E.2d 505, 508 (1979).

The SCAWV has long reasoned that "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970). The *Crockett* Court provided guidance on the meaning of ambiguity:

> [a]mbiguity is a term connoting doubtfulness, doubleness of meaning of indistinctness or uncertainty of an expression used in a written instrument. It has been declared that courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create an obscurity or uncertainty in a statute by reading in an additional word or words. As stated in the early case of *McClain Adm'r v. Davis*, 37 W. Va. 330, 16 S.E. 629, 18 L.R.A. 634, 'Where the language is unambiguous, no ambiguity can be authorized by interpretation.' Plain language should be afforded its plain meaning. Rules of interpretation are resorted to for the purpose of resolving an ambiguity, not for the purpose of creating it.

*Id*. at 718-19, 172 S.E.2d at 387. Having generally discussed the parameters of statutory construction, we now turn to the statute at issue in the case at bar, West Virginia Code § 55-7B-9. West Virginia Code § 55-7B-9 provides, in part:

6

(a)     In the trial of a medical professional liability action under this article involving multiple defendants, the trier of fact shall report its findings on a form provided by the court which contains each of the possible verdicts as determined by the court. . . .

(b)     The trier of fact shall, in assessing percentages of fault, consider the fault of all alleged parties, including the fault of any person who has settled a claim with the plaintiff arising out of the same medical injury.

(c)     If the trier of fact renders a verdict for the plaintiff, the court shall enter judgment of several, but not joint, liability against each defendant in accordance with the percentage of fault attributed to the defendant by the trier of fact.

(d)     To ***determine the amount of judgment to be entered against each defendant, the court shall*** first, after adjusting the verdict as provided in section nine-a [§ 55-7B-9a] of this article, ***reduce the adjusted verdict by the amount of any pre-verdict settlement arising out of the same medical injury***. The court shall then, with regard to each defendant, multiply the total amount of damages remaining, with prejudgment interest recoverable by the plaintiff, by the percentage of fault attributed to each defendant by the trier of fact. The resulting amount of damages, together with any post-judgment interest accrued, shall be the maximum recoverable against the defendant . . . (Emphasis added)

In denying Mr. Cummings' *Motion to Preclude Defendants from Receiving a Pro Tanto Verdict Reduction in Amount of Plaintiff's Settlement with Nursing Home Defendants*, the circuit court reasoned, and we concur, that the text of West Virginia Code § 55-7B-9 is "clear and unambiguous." In West Virginia Code § 55-7B-9(b), the Legislature expressly requires that the trier of fact, in assessing percentages of fault, shall consider the fault of all alleged parties, including the fault of anyone who has settled a

7

claim with the plaintiff arising out of the same medical injury.[5] In subsection (d), the Legislature again expressly dictates that the court *shall* reduce the adjusted verdict (adjusted for percentages of fault assigned by trier of fact) by the amount of any pre-verdict settlement arising out of the same medical injury. The actions required in subsection (b) are also referenced in subsection (d); thus, we find no ambiguity or inconsistency.

In West Virginia Code § 55-7B-1, the Legislature specifically noted its duty and responsibility "to balance the rights of our individual citizens to adequate and reasonable compensation with the broad public interest in the provision of services by qualified health care providers and health care facilities who can themselves obtain the protection of reasonably priced and extensive liability coverage." Accordingly, we find no error with the circuit court's determination that the "pro tanto reduction requirement of the MPLA (West Virginia Code § 55-7B-9(d))" is clear and should be applied as written.[6]

---

[5]Neither party raises any argument to suggest that Mr. Cummings' claims against the Nursing Home Defendants did not arise from the same medical injury as Mr. Cummings' claims against Dr. Paine and PA Klennert.

[6]As noted by Justice Wooton in his concurring opinion in *Progressive Max Ins. Co. v. Brehm,* 246 W. Va. 328, 335-36, 873 S.E.2d 859*,* 866-67 (2022), despite the harshness of this result, we are compelled to apply it:

> This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.

In the second subpart of his assignment of error, Mr. Cummings contends that the circuit court erred in failing to find that West Virginia Code § 55-7B-9 is inconsistent with the provisions of West Virginia Code § 55-7-13d, which provides no reductions in verdicts for pre-verdict settlements arising out of the same injury. As the parties acknowledge, in 2015, the West Virginia Legislature "made major changes to this State's general liability statute, [West Virginia Code §]§ 55-7-1 to -31. The changes abolished joint and several liability and instituted a new modified comparative fault system." *State ex rel. Chalifoux v. Cramer*, No. 20-0929, 2021 WL 2420196 at *4 (W. Va. June 14, 2021) (memorandum decision). As part of those changes, West Virginia Code § 55-7-13d(a)(3) (2015), was written to state, in pertinent part, that

> [i]n all instances where a nonparty is assessed a percentage of fault, any recovery by a plaintiff shall be reduced in proportion to the percentage of fault chargeable to such nonparty. Where a plaintiff has settled with a party or nonparty before verdict, that plaintiff's recovery will be reduced in proportion to the percentage of fault assigned to the settling party or nonparty, rather than by the amount of the nonparty's or party's settlement.

---

Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009); *accord Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.") As such, the remedy for this perceived inequity lies not with this Court, but with the West Virginia Legislature.

Subsequently, in 2016, West Virginia Code § 55-7B-9, as cited above, was amended at subsections (b) and (d) to include language that parties who settled a claim with the plaintiff arising out of the same medical injury shall be considered in assigning fault (subsection b) and that any verdict awarded to plaintiff should be reduced by the amount of any pre-verdict settlements arising out of the same medical injury (subsection d) – irrespective of whether or not the trier of fact assigned fault to the settling defendants. Mr. Cummings argues that these two statutory provisions are in conflict and in interpreting these provisions, the court erred in failing to read the statutes in *pari materia*. We disagree. First, we note that the

> in *pari materia* rule of statutory construction applies . . . only when the particular statute is ambiguous: "'The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous.'" Syl. Pt. 4, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984), quoting Syl. Pt. 1, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

*Kimes v. Bechtold*, 176 W. Va. 182, 185, 342 S.E.2d 147, 150 (1986). Here, as noted above, we have determined that West Virginia Code § 55-7B-9 is not ambiguous and thus not subject to the in *pari materia* rule of statutory construction. Moreover, even if we were to find any conflict with the provisions of West Virginia Code § 55-7B-9 and West Virginia Code § 55-7-13d, as a general rule of statutory construction, a specific statute must be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled. *See* Syl. Pt. 1, *UMWA ex rel. Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984). Thus, because the MPLA specifically controls the underlying claim, a

10

medical malpractice action, the fault assessment rules within West Virginia Code § 55-7B-9 must be given preference over the general provisions of West Virginia Code § 55-7-13d. Accordingly, we find no error in the circuit court's decision.

In the third subpart of his assignment of error, Mr. Cummings suggests that the application of West Virginia Code § 55-7B-9 creates an absurd and unjust result in a "double reduction" of Mr. Cummings' award. In this same vein, Mr. Cummings avers that West Virginia § 55-7B-9 violates the certain remedy right provided by the West Virginia Constitution in "[a]llowing defendants the benefit of a double reduction of medical malpractice verdicts would deny plaintiffs a full, complete, and adequate remedy when they settle with some, but not all, defendants prior to trial." Again, we disagree.

Here, Mr. Cummings argues of the "absurdity" and fundamental inequity of West Virginia Code § 55-7B-9, in that the reduction of the jury's verdict by the amount of settlement monies received by a plaintiff against the settling defendants, coupled with a reduction of any fault attributed to the settling defendants would produce an unjust result by doubly reducing his recovery. However, that is not the situation in the case at bar. Here, the jury did not find any fault on the part of the Nursing Home Defendants, who settled Mr. Cummings' claims against them pre-verdict, and, thus, Mr. Cummings' award was not subject to any "double reduction." Hence, his arguments relating to the potential of double reduction is nothing but a hypothetical concern.[7] Accordingly, we decline to address Mr.

---

[7] This Court, like the SCAWV, is not authorized to resolve such hypothetical case scenarios:

11

Cummings' arguments regarding the constitutionality of a potential double reduction of a jury's damage award, as no such situation exists in the case at bar. Thus, we find no error in the circuit court's concurrent determination.

## IV.    CONCLUSION

Wherefore, for the foregoing reasons, the October 15, 2022, orders of the Circuit Court of Monongalia County are hereby affirmed.

**Affirmed.**

---

> It is a deeply rooted and fundamental law that 'this Court is not authorized to issue advisory opinions[.]' *State ex rel. City of Charleston v. Coghill*, 156 W. Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden J., dissenting) . . . This Court further addressed the issue of advisory opinions in *Mainella v. Board of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185-86, 27 S.E.2d 486, 487-88 (1943), as follows:  Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes. The pleadings and evidence must present a claim of legal right asserted by one party and denied by the other before jurisdiction of a suit may be taken.

*State ex rel. Morrisey v. W. Va. Off. of Disciplinary Couns.*, 234 W. Va. 238, 246, 764 S.E.2d 769, 777 (2014).