STANNARD SUPPLY COMPANY *et al. v.* DELMAR COAL
COMPANY *et al.*

*and*

GEORGE PUTZEK *et al. v.* DELMAR COAL COMPANY *et al.*

(No. 7775)

Submitted November 2, 1933.   Decided December 16, 1933.
(Rehearing denied March 27, 1934)

*Frank R. Amos, Talbott & Talbott,* and *Charles B. Johnson,*
for appellants.

*Wm. T. George* and *Frank Lively,* for appellees.

LITZ, JUDGE:

This is an appeal from a decree fixing allowances to special receivers and their counsel.

The bill in the first above entitled cause was filed at January Rules, 1929, after the issuance and service of process, alleging that the defendant, Delmar Coal Company, a corporation, was indebted to plaintiffs' in the sum of $1,553.09, for labor performed by them for it, and asserting a lien for the payment thereof upon all of its property, under sections 19 and 20, chapter 75, Code 1923. The bill also alleged that the Delmar Coal Company was insolvent, and prayed for the appointment of special receivers for its assets and the administration thereof for the benefit of the creditors. The Delmar Coal Company then owned, besides other properties, a coal mining plant in Monongalia County, commonly called the Ruth mine, and coal mining operations in Taylor County known as the Barry mine and No. 1 and No. 4 Pittsvein mines. The properties were affected by many fixed incumbrances, including a purchase money lien debt of about $280,000.00, in favor of Pittsvein Coal Company, a corporation, on the Pittsvein mines (except such equipment as had been added after the creation of the lien), consisting of the plants and 900 acres of land. An order was entered upon the bill, January 8, 1929, enjoining Delmar Coal Company from removing coal from its Pittsvein mines. The plaintiffs were represented by the law firm of Talbott & Talbott of Philippi, composed of W. Bruce Talbott and E. Wayne Talbott.

On January 24, 1929, the bill in the above second styled cause was filed in open court alleging that the defendant, Delmar Coal Company, was indebted to the plaintiff, Stannard Supply Company, a corporation, in the sum of $51,525.54, by virtue of numerous assignments to it from employees of the coal company for labor performed by them for it, and asserting a lien, for the payment thereof, upon the property of the debtor corporation. The bill also alleged the insolvency of the Delmar Coal Company, and prayed for the appointment of receivers for, and administration of, its assets. The affidavit of John F. Phillips, president of Delmar Coal Company, stating that the corporation was insolvent and unable

to meet its obligations, was filed in support of the bill. Charles B. Johnson and William G. Johnson, attorneys of Clarksburg, represented the plaintiffs. On the day of the filing of the second bill, an order was entered upon both bills, considered together, appointing Carl L. Hornor and Edgar S. Phillips, special receivers, as prayed. An order was entered, February 16, 1929, consolidating the causes, filing the first report of the receivers, appointing, as counsel for them, W. Bruce Talbott and Charles B. Johnson, and approving a lease by the receivers to E. H. Reppert of the Ruth and Pittsvein mines on a royalty basis of fifteen cents per ton for all coal removed from the premises. Reppert was already operating, and continued to operate, the Barry mine under a lease to him from Delmar Coal Company. An order was entered, August 10, 1929, appointing Frank Amos, at the instance of Charles B. Johnson and W. Bruce Talbott, as additional counsel for the receivers, filing the answer of Pittsvein Coal Company, and referring the cause to a commissioner in chancery to ascertain and report the assets and liabilities in the order of priority. The answer of Pittsvein Coal Company set up its lien debt of $265,000.00, with interest from February 1, 1928, admitted the expediency and necessity of the receivership to preserve the property of the debtor, expressed disapproval of the lease to Reppert, and averred that by reason of the steady decline in the value of coal properties in West Virginia the receivership should be terminated as soon as practicable by sale of the assets and distribution of the proceeds among the creditors; and to this end prayed for forthwith reference of the cause to a commissioner in chancery for the purpose of ascertaining and reporting the assets and debts in the order of priority. An order was entered August 12, 1929, filing the petition of E. H. Reppert for an extension of his lease from the receivers, and reciting objection by Pittsvein Coal Company to the granting thereof. An order was entered, August 17, 1929, with the consent of Pittsvein Coal Company and other interested parties, extending the lease until the sale of the property. An order was entered, March 11, 1930, directing payment of $800.00 to William G. Johnson for services rendered ''in ascertaining the assets of the Delmar Coal Company, and securing certified copies of all records

necessary to establish title, and define the various properties and interests of Delmar Coal Company * * * and to cover any additional services that may be necessary in and about the title work of the Delmar Coal Company.'' By written contract of April 10, 1930, Pittsvein Coal Company sold its purchase money lien claim to Waddell Fuel Company, a corporation, and agreed to use its best endeavors in hastening the termination of the receivership and the sale of the assets. June 2, 1930, Waddell Fuel Company employed Arthur S. Dayton, an attorney of Charleston, to assist counsel for Pittsvein Company in securing a speedy sale. The report of the commissioner was filed May 26, 1930. Numerous exceptions thereto, involving issues among the creditors asserting labor liens and between them and the common creditors, delayed the entry of a decree of sale until August 7, 1930.

In the same decree, compensation was allowed the special receivers and attorneys (without proof of the reasonableness thereof, upon the assumption that the assets approximated $400,000.00), as follows: Carl L. Hornor, special receiver, $6,000.00; Edgar S. Phillips, special receiver, $4,000.00; Charles B. Johnson, attorney, $7,500.00; E. Wayne Talbott, attorney, $6,500.00; and Frank R. Amos, attorney, $4,000.00. The amounts specified were promptly paid to the persons named. The assets were sold September 8, 1930, for $149,000.00, referable to the various properties, as follows: The property of the Pittsvein mines, covered by the purchase money lien in favor of the Pittsvein Coal Company, $50,000.00; the equipment added to these mines after the creation of the lien, $5,000.00; the Barry mine, $31,000.00; the Ruth mine, $51,600.00; and other property, $11,600.00. The Pittsvein Coal Company purchased the Pittsvein mines for its assignee, Waddell Fuel Company. The proceeds from the sale and lease, after payment of prior liens, will be absorbed by the labor liens, leaving nothing for common creditors. E. Wayne Talbott, Charles B. Johnson and George S. Couch, each, received $2,486.68 commissions, as special commissioners conducting the sale. Other items of expenses, not including the ordinary costs of suit, follow: cost of reference, $2,816.60; advertisement of sale, $1,084.50; amount paid the partnership of Hornor Brothers (of which Carl L. Hornor was a member) for

engineering work, $2,738.68. On February 17, 1931, Waddell Fuel Company became a party to the proceeding by petition. Thereafter, upon an appeal, obtained. by it in its own name and in the name of Pittsvein Coal Company, the decree of August 7, 1930, in so far as it fixed allowances to the receivers and attorneys, was reversed for want of evidence to establish the reasonableness thereof, and the causes were remanded "for the purpose of ascertaining reasonable compensation, upon notice and hearing." 110 W. Va. 560. When the cases went back, the receivers and attorneys adduced evidence to show that George S. Couch of counsel for Pittsvein Coal Company had consented to the allowances, and that the same were reasonable. Whereupon, a decree was entered, recasting the original allowances, as follows: Carl L. Hornor, $6,000.00; Edgar S. Phillips, $1,000.00; Charles B. Johnson, $6,000.00 and expenses which will amount to probably $1,-000.00 or more; W. Bruce Talbott, $3,000.00; and Frank Amos, $1,000.00. Phillips, Johnson, Talbotts and Amos appealed.

It is now urged by appellants that the original allowances should have been approved in the decree, complained of, because (1) the Waddell Fuel Company asserted in its intervening petition that Pittsvein Coal Company did not then have any interest in the suits and that the petitioner was entitled to the funds in the hands of the special commissioners applicable to the purchase money lien assigned to it by the Pittsvein Company (the contention being that these averments constituted waiver by Waddell Fuel Company of its right to attack the decree of August 7, 1930) ; (2) the Waddell Fuel Company being permitted to intervene upon its petition which did not indicate that it intended to question the allowances to the attorneys and receivers under the decree of August 7, 1930, should have been denied the right to appeal therefrom; (3) consent of George S. Couch, as counsel for Pittsvein Coal Company, to the original allowances is established by clear preponderance of the testimony; (4) the Waddell Fuel Company is estopped by its delay in challenging the allowances; (5) the allowances were reasonable.

The answers to the first two points are (a) that the allega-

tions in the intervening petition are not inconsistent with the right of the Waddell Fuel Company to attack the allowances, and (b) that the adjudication on the former appeal, recognizing this right, is the law of the case.

Assuming that counsel of record for Pittsvein Coal Company consented to the allowances, which is denied by him, the decree of August 7, 1930, was not predicated upon the consent of counsel, and as already stated the cause was remanded on the former appeal ''for the purpose of ascertaining reasonable compensation upon notice and hearing''. The issue thus defined, was properly adhered to by the trial chancellor. The court was not bound by the alleged consent of counsel which was never carried into judgment.

There is no merit in the contention that the decree of August 7, 1930, should have been promptly challenged. The appeal therefrom, within the statutory period, was sustained in the former decision.

With reference to the reasonableness of the allowances, it appears, as already indicated, that there was no controversy about the fixed liens, including the purchase money lien of the Pittsvein Coal Company, and as the assets were insufficient to pay any part of the general debts, the reference and other proceedings in the causes involved no findings of practical importance except the ascertainment of labor liens. As Johnson and Johnson and Talbott & Talbott represented substantially all of the labor liens, which amounted to $80,000.00, their clients were practically the sole beneficiaries of their services as attorneys for the receivers. It is estimated that 80% of the labor claims will be paid. Johnson and Johnson represented a large amount of these claims in addition to that of Stannard Supply Company, amounting to $51,525.54; and are receiving for their services one-third of the amount collected. Talbott & Talbott represented labor claims in the sum of $20,000.00. The main reliance of the attorneys for the justness of their original allowances is that the lease to Reppert of the Ruth and Pittsvein mines was suggested by W. Bruce Talbott and recommended by him and Charles B. Johnson. The gross royalties received under the leases from the receivers to Reppert and Delmar Coal Company to him amounted to $115,000.00, the larger part of which was allo-

cated to the purchase money lien in favor of the Pittsvein Coal Company, on the basis of the tonnage shipped from the Pittsvein mines. It is shown by the testimony for appellants that the Pittsvein Coal Company reluctantly acquiesced in the lease of the Pittsvein mines to Reppert and that Waddell Fuel Company, after acquiring the interest of Pittsvein Company not only employed counsel to "speed the cause", but resorted to what is charged by appellants as unfair practices to terminate the lease and force a sale. Two-thirds of the entire costs of the suit must be borne by the Waddell Fuel Company. The trial chancellor was evidently of opinion, under the evidence, that Phillips and Amos, who represented a common claim of $250,000.00 in favor of the Eastern Fuel Company, had rendered limited services under their official appointments.

As a general rule, counsel representing parties to the suit are ineligible to appointment as attorneys for receivers. Smith on Receivers (2nd Ed.), section 631. And in case of their appointment, their dual employment should be considered by the chancellor in fixing their fees for representing the receivers.

The allowance of counsel fees to attorneys representing receivers is largely for the determination of the receivership court, and will not be changed or modified on appeal except for abuse of a sound discretion. 2 Smith on Receivers (2nd Ed.), 1733; 53 C. J. 378; Clark on Receivers, (2nd Ed.), sec. 642 (a). The same rule applies to compensation for receivers.

It is contended that the trial court committed technical errors (1) in refusing to permit appellants, Amos and Phillips, to take additional testimony upon their motion to disqualify the commissioner to whom the matters in controversy were referred after he had filed his report; (2) in refusing to enter judgment in favor of appellants upon a bill of particulars filed by them specifying the items of their claim for failure of appellees to file formal answer thereto; (3) in decreeing that the excess allowances to appellants, under the decree of August 7, 1930, were trust funds, and requiring the repayment thereof to a special receiver for distribution to the creditors; and (4) in decreeing costs against appellants.

The motion to reject the report of the commissioner was based upon the claim that he was counsel in the cause. It does not appear that he represented anyone interested in the reduction of allowances to the attorneys and special receivers. Moreover, Amos and counsel representing Phillips were attorneys in the case and are presumed to have known the facts disclosed by the record.

The bill of particulars specifying the items of appellants' claims was not a pleading and did not require an answer by appellees.

The decreeing of costs against appellants was not error because (1) the allowance and apportionment of costs is ordinarily in the discretion of the chancellor, and (2) the disposition of costs in this case was necessarily involved in the determination of the allowances to the attorneys and special receivers.

E. Wayne Talbott objects that judgment was entered jointly against himself and his brother, W. Bruce Talbott, for the excess allowance of counsel fees in his name, under the decree of August 7, 1930, on the ground that the allowance was intended for his brother, who had been appointed counsel for the special receivers.

W. Bruce Talbott, in his testimony before the master commissioner, testified that he and E. Wayne are partners and that the commission received by E. Wayne as special commissioner and the amount allowed by the decree of August 7, 1930, in the name of E. Wayne as attorney for the receivers, was divided equally between them. E Wayne also testified before the master commissioner that he and his brother, W. Bruce, were partners at law and, as such, received fees from the plaintiffs in the first entitled cause and other creditors they represented in the suits. It appears also that E. Wayne, acting instead of his brother, rendered substantial services for the special receivers. After the case had been argued, the Talbotts filed their joint affidavit stating that although they "practiced their profession as law partners under the firm name of Talbott & Talbott * * * they are not general partners or partners in business and frequently take cases and represent clients individually, in which case, each collects his own fee." As the matter complained of is primarily a ques-

tion of fact, there is no satisfactory basis on which we could say that the trial chancellor was plainly wrong.

The decree of the circuit court is affirmed.

*Affirmed.*