STANNARD SUPPLY COMPANY *et al. v.* DELMAR COMPANY *et al.*

(No. 7005)

Submitted May 21, 1931.   Decided June 2, 1931.

*Wm. T. George, J. Howard Hundley* and *Ira E. Robinson,* for appellants.

*W. Bruce Talbott, E. Wayne Talbott, William G. Johnson, Charles B. Johnson, William E. Glasscock, Jr.,* and *Walter Vickers,* for appellees.

LIVELY, JUDGE:

These suits, begun in 1929, were afterwards consolidated. The suit of George Putzek and others against Delmar Coal Company and others was for the purpose of enforcing laborer's liens; and that of Stannard Supply Company was to enforce its claim. Receivers were appointed who operated the properties. A master commissioner made a comprehensive report of the properties, the liens thereon, their dignity and priorities, and other matters; and such proceedings were had that a final decree was entered on August 7, 1930, and the properties ordered to be sold by special commissioners. That decree allowed to the receivers for their services an aggregate sum of $10,000, being $6,000 to Horner and $4,000 to Phillips; it allowed to C. B. Johnson $7,500, to E. Wayne Talbott $6,-500, and to Frank R. Amos $4,000, all as attorney fees, and which were taxed as a part of the costs. The properties were sold and the sales confirmed. By decree of February 17, 1931, 66 2/3% of the costs of suits was directed to be paid out of the' rental fund derived from the Pittsvein Mining Property, 16 2/3% to be paid out of the rentals of the Ruth Mining Property, and a like per cent. out of the rental fund derived from the Barry Mining Property. On that day Waddell Fuel Company, which had purchased the purchase money lien of Pittsvein Coal Company on April 4, 1930, and decreed to Pittsvein, filed its petition asking to be (and was) substituted as defendant in lieu of Pittsvein. It appears that Pittsvein had purchased at the judicial sale for $50,000 the property on which it had a vendor's lien of approximately $300,000, and on some of the personalty sold, and that it had purchased as the agent of Waddell Fuel Company to whom it afterwards conveyed the property so purchased. The Waddell Fuel Company and Pittsvein appeal from the decree of August 7, 1930,

charging that the allowances to the receivers and attorneys were improperly awarded, and are excessive and unwarranted; and appeal from the decree of February 17, 1931, charging that the allocation of costs (66 2/3%) to the Pittsvein property (funds derived from its operation) is error, and that no part of that fund should have been paid out as costs, because it lessened the value of the vendor's lien. They say that their lien for purchase money was superior to and took preference over costs of the suit.

It appears that there were three mining properties owned by Delmar Coal Company, two in Taylor County and the other in Monongalia County, known as the "Ruth" mine, which consisted of 300 acres of coal and a good plant. The Pittsvein Mining Property in Taylor County, known as the "Pittsvein," consisted of about 900 acres of coal operated by two mines. This is the property out of which appellants' interests arise. The other mine operation in Taylor County, known as "Barry" property, consisted of 70 acres of coal and a good mining plant. The receivers realized about $70,000 from operation of the Pittsvein, about $47,000 from the other two operations, and about $10,000 from other sources; and, it is stated, they have in their hands for distribution about $31,000.

The decree of August 7, 1930, challenged in respect to the allowances to the receivers and attorneys, was entered at a special term, and had been prepared in advance and carbon copies sent to the various attorneys, including those representing Pittsvein. At that time, appellant Waddell was not a party and had no interest in the case in so far as the pleadings and proceedings then showed. However, the draft of the decree did not contain any mention of receivers' allowances or attorneys' fees. That part of the decree was prepared and attached to the original draft at the special term, the amounts being left blank for the court to fill in. No one had prior notice that this matter of allowances and fees would be included in the decree or submitted to the court. Neither the receivers nor attorneys for them had made any formal application for allowances, nor had the report of the master touched thereon. No evidence was taken as to the value of the services,

or what would be a just compensation therefor. The court was evidently led to understand that the parties had agreed to waive the usual and prudent proceedings justifying, a decree for such allowances, and had submitted the entire matter without evidence, or formal itemization of the services performed. In argument it was admitted that the proceeding was irregular and could not be justified, except upon the theory of waivers and consent; and there is a sharp controversy as to whether counsel for Pittsvein consented to and confirmed the amount of these allowances.

Pending the appeal here, in order to clarify this controverted question, counsel for appellees, on May 13, 1931, served notice on appellants that it would move the trial court on the following day to amend the decree of August 7, 1930, so as to show that the allowances and their amounts had been consented to by counsel for Pittsvein. Appellant, Waddell Fuel Company, appeared specially and objected to any modification. Without any evidence being taken, the court amended the decree of August 7, 1930, the amendment reciting that counsel for Pittsvein had appeared in open court, and with other attorneys had placed an "OK" on the decree and signed his name on the back thereof, and consented and agreed that the allowances made should be taxed as a part of the costs of the suits and paid out of the rental fund coming into the hands of the special receivers. By *certiorari* this decree of May 14, 1931, has been brought before us, over the objection of appellants. In opposition to the truth of the recitals in that decree, they have tendered affidavits affirming that the decree of August 7th was not a consent decree. To the filing of these affidavits, appellees object, asserting that affidavits cannot be used to contradict a record or decree, citing *Fox* v. *City of Hinton,* 70 W. Va. 654.

Can we consider the decree of May 14, 1931? After the special term of August, 1930, was ended the decree entered at that term became final. It could not be changed except for clerical errors and misprisions. *Vance* v. *Ry. Co.,* 53 W. Va. 338, 341; sec. 5, chap. 134, Code 1923. In *Halley's Admr.* v. *Baird,* 1 H. & M. 24 (Va.), it was held that the "district court has no power or jurisdiction to reverse, alter or amend

a judgment given at a former term of said court which had been entered on the order book, and signed by the judge in open court''; quoted in *McClain's Admr. v. Davis,* 37 W. Va. 330, 334. By the so-called amendment entered May 14, 1931, the character of the decree of August 7, 1930, is radically changed. It is changed from a decree upon the pleadings and evidence to a consent decree. A consent decree is not the judgment of the court, but the act of the parties consented to by the court. ''A consent decree is a contract or agreement' between the parties to the suit entered of record in the cause with the consent of the court. Such consent decree may or it may not be founded upon the pleadings and proofs in the cause. It is certainly not necessarily based upon the record or any report, paper, or exhibit filed in the suit. It may be wholly or in part independent of any matter or paper in the record, and may be even contradictory or the reverse of what these show ought to be the decree. In this respect it differs radically from a decree entered upon the decision of the court. Such decree must of necessity be founded upon the pleadings and proofs in the cause. *Morris* v. *Peyton,* 29 W. Va. 201.'' 8 Ency Dig. Va. & W. Va. Repts. p. 197.

It is quite true that a court has the inherent power to amend its records in accordance with the facts, but the method of ascertaining a fact which will change a final decree is jealously guarded. Appellees cite our recent case of *Dwight* v. *Hazlett,* 107 W. Va. 192, as authority to justify the amendatory decree of May 14, 1931. In that case, a decree had been entered, and at a later day in the term the plaintiff therein moved the court to set it aside on the ground that he had not consented and the motion was not passed upon until about a year later when it was denied. An appeal was granted, and pending the appeal a diminution of the record was suggested and a memorandum made by the court and found with the papers at the time he overruled the motion was brought up which showed that plaintiff by counsel had consented to the decree, and a certificate of the court to that effect was spread on the record after the appeal had been granted. At the time the motion to set aside the decree was made, it had not become final, the term not having ended, and that motion so

long as not disposed of kept the decree from being final. It was in the "breast of the court," and could have been anulled, modified or changed. That case has little application to the radical change, at a later term, in the final decree here involved. The change here made was on the theory that a consent decree was intended to be entered. There was nothing in the body of the decree which intimated that these allowances were assented to by any one. The amendment sought was more in the nature of a *nunc pro tunc* decree. It is quite different from the former decree. It is a decree based on a consent, the nature of which is above set out, and not on the judgment of the court. It cannot be sustained as a *nunc pro tunc* decree under the well settled rules governing the entry of such decrees. We find no memorandum of any character with the papers, and no competent evidence on which a *nunc pro tunc* order could be based. The decree recites that counsel made an "OK" on the decree and signed their names on the back thereof. This is evidently an error, for the original decree does not bear any kind of endorsement, except that of the court, nor does it have the signature of any attorney thereon. This decree must have been confused with some other consent decree entered in the causes. What evidence should be required to sustain the entry of a *nunc pro tunc* decree? JUDGE LITZ, in *Cameron* v. *Cameron*, 105 W. Va. 621, 625, states the requirement of evidence in this state as follows: "The more general rule is that a *nunc pro tunc* order can only be made upon showing some entry or memorandum upon the records, or *quasi* records of the court, and that parol evidence of the rendition of the judgment and its terms cannot be received, at least until such entry or memorandum is produced." See *McClain* v. *Davis*, 37 W. Va. 330. In *Ex parte Coon*, 81 W. Va. 532, a memorandum made by the trial judge on a calendar, supported by his personal recollection and affidavits of attorneys engaged on both sides of the case, was held to be sufficient evidence on which to base the "now for then" order. In the instant case, no evidence was tendered to support the new decree, and, as above set out, there was nothing in writing among or on the records which would evidence the entry of the decree as a consent. We cannot consider the May 14th

decree as an amendment of the former decree, nor as a *nunc pro tunc* decree.

It is charged that the allowances are excessive; but as the court heard no evidence as to the value of those services, apparently acting upon the assumption that such evidence was waived by consent, it would be improper for this court to pass upon the alleged excessiveness. That portion of the decree of August 7, 1930, fixing these allowances will be reversed and the causes remanded for the purpose of ascertaining just and reasonable compensation, upon notice and a proper hearing.

We come to the second point of error. Should the fund derived from the Pittsvein operations escape the burden of costs? Appellants point out that the lien for purchase money of Pittsvein on the "Pittsvein operation" in Taylor County was unquestioned, and was prior to the lien of plaintiffs thereon or any other lien (except taxes), and argue that the costs of the suit, and receivership expenses in the operation of the mines on that property, should not be paid out of the rental fund derived from that property until the purchase money lien had been paid in full. They cite *Bank* v. *Coal Corporation*, 107 W. Va. 460; *Mahan* v. *Bank of Pax*, 109 W. Va. 595, 155 S. E. 664, kindred cases from other states, and secs. 641 and 642, Clark on Receivers. This argument is untenable, for Pittsvein was not a nominal party. In its answer the insolvency of its purchasers, Delmar Coal Company, and its inability to protect its property and pay its debts was charged, and the appointment of a receiver was suggested for the "best interest of all parties." There was a tax lien on the property of about $33,000 which was paid by the receivers, thus relieving Pittsvein from payment of that prior lien. By the receivership, the mines were kept in operation until the sale, thus preventing deterioration from non use. There were substantial benefits received by appellants, and they should be charged with their just proportion of the expenses incurred. This principle was followed in *Mahan* v. *Bank of Pax, supra,* where the lien of a trust deed creditor (Gray) was made servient to payment of costs because he had actively participated in the litigation in the assertion of his debt against the estate. If the lien holder asks for the re-

ceiver, or adopts the receivership as a means of asserting his debt, and does not, with reasonable promptness, pursue his remedy for asserting his lien other than through the receiver, he should bear his part of the expenses of the receivership. Clark on Receivers, secs. 639 and 641 (d).

Another matter remains. Ruth Supply Company, a mechanic's lienor, assigns cross error in the decree of August 7, 1930, to the effect that it (Ruth Supply Company) should have been decreed to have a lien on *all* of defendant Delmar Coal Company's property wherever situate in the state, instead of upon its property in Monongalia County where the material was furnished to the mine in that county. This cross-error was filed May 7, 1931. This litigant is not before this court either as appellant or appellee. It was not served with process on this appeal. The appeal granted to Waddell and Pittsvein has no connection with the right of the mechanic's lienor. Their rights are separate and distinct from Ruth Supply Company and the decree does not affect them equally. The appeal here does not open the case for cross assignment of error to a party not affected by it. *Maxwell* v. *Adams*, 91 W. Va. 486. The time (eight months) in which Ruth Supply Company could have appealed had expired before the cross assignment was filed and it came in too late to be considered as an application for appeal. This appeal concerns the allowance to appellees of attorneys' fees and receivers' charges, and what fund, if any, they should be paid out of, and does not affect Ruth Supply Company's alleged restriction of its lien. No appeal having been taken by Ruth Supply Company, it cannot be heard on its cross assignment of error and the motion to dismiss the same will be upheld.

The decree of August 7, 1930, will be reversed in part as herein set out, and the cause remanded.

*Reversed in part; remanded.*