STATE *v.* ANDREW THORNHILL

(No. 6996)

Submitted October 27, 1931.     Decided November 3, 1931.

*John Chafin* and *Hager & Glenn,* for plaintiff in error.
*Howard B. Lee,* Attorney General, *R. A. Blessing,* and *W. Elliott Nefflen, Attorneys General,* for the State.

MAXWELL, JUDGE:

Convicted of murder in the second degree in the circuit court of Logan County and sentenced to eighteen year's confinement for the killing of Taylor Fraizer Bowling, the defendant has been awarded a writ of error.

The sole bill of exceptions embraces all of the evidence and instructions. The state moves to dismiss the writ of error because it is said that no order was entered by the trial court

or the judge thereof in vacation, within proper time, making the bill of exceptions a part of the record. In support of its motion the state relies upon repeated adjudications of this Court that a bill of exceptions will not be considered unless made part of the record by proper order. Typical of the many decisions on this point are *State v. Yoes,* 67 W. Va. 546; *Hall v. Shelton,* 93 W. Va. 592.

Though the printed record does not disclose an order of the trial court or judge thereof in vacation making the bill of exceptions a part of the record, there has recently been filed in this Court a *nunc pro tunc* order of the said judge entered the 13th of October, 1931, as and for the 17th of December, 1930, the last named date being the date on which the bill of exceptions was signed by him. Appended to the said *nunc pro tunc* order is a certificate of the clerk of said court stating that the said order "was signed by the Judge of the Circuit Court of Logan County, West Virginia, in vacation of said court, on the 17th day of December, 1930, but was for some reason inadvertently not spread upon the order book * * *." On the basis of fact thus certified by the clerk it was proper for the judge in vacation to enter the said *nunc pro tunc* order. "An order can be entered *nunc pro tunc* to make a record of what was previously done by the court although not then entered, but where the court has wholy omitted to make an order which it might or ought to have made, it cannot afterward be entered *nunc pro tunc.*" *Payne v. Riggs,* 80 W. Va. 57. More recent cases on same point: *Cameron v. Cameron,* 105 W. Va. 621, and *Stannard Supply Co. v. Coal Co.,* 110 W. Va. 560, 158 S. E. 907. The bill of exceptions thus being made a part of the record, it follows that the state's motion to dismiss the writ of error must be overruled.

As to the instructions, we are of opinion that the two which were given on motion of the state were of usual and approved substance, and that the subject matter of the two instructions tendered by the defendant and refused by the court was embraced within defendant's instruction No. 4, which was given.

The fedendant also challenges rulings of the court in admitting certain testimony offered by the state and in rejecting

certain testimony offered by the defendant. These assignments of error cannot be considered because not made the subject of specific bills of exceptions. *State* v. *May*, 111 W. Va. 118, 160 S. E. 918. Therefore, the sole matter to be considered on this review is the sufficiency of the evidence to warrant a conviction of murder.

The record discloses the following facts: About 9:30 of the evening of November 23, 1929, defendant's daughter was married to Clifton Hoover, at her father's home at Crown, Logan County, in the presence of her immediate family and a neighbor. Very soon after the nuptial ceremony the deceased, with whom there were several loud and boisterous men, all uninvited, appeared at the home of the defendant and demanded admission. Over his protest, this band of intruders gained admittance to the home and therein engaged in dancing and promiscuous drinking. Deceased, a man weighing 180 pounds, and, according to much evidence, under the influence of liquor, began to abuse and mistreat defendant's said son-in-law, a young man weighing about 115 pounds. Defendant intervened and insisted that deceased leave the home immediately, which he did only to return within a few minutes and repeat his attack upon the young man. He was then ejected by defendant without violence, and while in a next door neighbor's yard flourishing a pistol, deceased engaged in the use of vile and abusive language, within the hearing of several witnesses, concerning defendant and his family. For the third time he entered the home, this time by the rear door, declaring he was "going to run the place." The evidence is uncontradicted that after shoving defendant's wife violently against the wall, he renewed his assault upon the son-in-law, seized him by the throat, and while brandishing a pistol, applied vile epithets to him. Defendant again intervened, seizing deceased by the shoulder and started to eject him from the house. A scuffle followed, in the course of which deceased exclaimed to defendant, "I will shoot your (profane epithet) brains out." Defendant thereupon drew his pistol, shot and killed deceased. The movements of deceased at the time of making the threat indicated an effort on

his part to draw a pistol, and the circumstances were such as to warrant defendant in the belief that it was the purpose of deceased to shoot him.

In the light of the foregoing circumstances, particularly when coupled with the fact that defendant and deceased were practically strangers to each other and that there had been no ill feeling between them, we perceive no grounds upon which a jury might properly base a verdict of murder in the second degree. Such verdict must be based on malice established by the evidence beyond all reasonable doubt. The evidence clearly and unequivocally discloses that Bowling was a trespasser upon defendant's property; that he, while evidently in a state of intoxication invaded the defendant's home and by his own ribald and abusive language and by threat and assault precipitated and provoked a situation which resulted in his death. Our courts recognize one's right to take the life of another if necessary in defense of his person, habitation or property where that other manifestly intends and endeavors by violence to commit a forcible or atrocious felony upon either. It is justifiable homicide. The justification of his act must depend upon the circumstances as they appear to him. *Parrish v. The Commonwealth,* 81 Va. I. A defendant, to excuse the slaying, must have acted under an honest belief at the time that it was necessary to take the life of his adversary in order to save his own or to avoid serious bodily injury, or in defense of his household; and it must appear that there was reasonable cause to excite his apprehension. *State v. Abbott,* 8 W. Va. 741; approved in *State v. Cain,* 20 W. Va. 679; reaffirmed in *State v. Evans,* 33 W. Va. 417.

In the instant case the record is replete with vile, opprobrious and contemptuous language on the part of deceased regarding defendant and members of his family. This conduct, together with gestures and assaults, was sufficient to give rise in the mind of the defendant to a reasonable apprehension of imminent danger to himself, and reasonable cause to fear for his own safety and the safety of his household, and an honest belief that deceased intended bodily harm and injury to himself and his family. Every element of justification was present.

Defendant had the right to eject deceased from the house. The threat of deceased then made to kill defendant was an overt act justifying the defendant in the belief that he must act quickly to save his own life. "Overt acts' in this connection are any acts which manifest to the mind of a reasonable person a present intention to kill the person against whom they are directed, or to do him great bodily harm. They should not be limited to attempts to show and use a deadly weapon with intent to kill or seriously injure." Wharton on Homicide, p. 412.

"The right of self-defense has been said to be an inalienable right, and should never be abridged, unless it is sought to be used as a means of offense and not of defense." I Michie on Homicide, p. 322.

The authorities are in accord on the proposition that where one, not himself at fault, is attacked in his home, and he honestly believes and has reasonable grounds to believe that his assailant is about to take his life or inflict great bodily harm, he is not required to retreat, but may meet the attack to the extent of taking the life of his adversary. 1 Michie, p. 413.

The home is of the most sacred of all institutions. Its significance finds its true interpretation in the instincts of our nature. Its importance is of universal appreciation. The law, ever cognizant of the indispensable and incomparable position of the home as a nursery of all other wholesome institutions, permits and encourages its protection. A man's house is his castle. It is a shelter for him and his family. He has a right to protect it from unlawful and violent invasion, and in exercising that right he may employ such force as seems reasonably necessary. *Watkins* v. *State,* 89 Ala. 82; Wharton on Homicide, sec. 530; 1 Bishop's Criminal Law, sec. 859; *Russell* v. *State,* 61 Fla. 60; *State* v. *Raper,* 141 Mo. 327. His right to use force in expelling an invader (1 Bishop's Criminal Law, sec. 532) is but a phase of this fundamental right and duty of a householder to protect his domicile. But, of course, he must not needlessly take life. *State* v. *Middleham,* 62 Iowa, 150.

It is in evidence that defendant fled immediately following the shooting and was not apprehended until about nine months thereafter, although the public authorities were on the lookout for him. The defendant, in attempting to explain his immediate flight, asserts that he had reason to believe that the friends of deceased were planning to kill him. Whatever may be said of this explanation as justification for his hasty departure, it in no sense justified him in avoiding arrest for a long period of time. However, evidence of escape and flight is only a circumstance which may be considered by a jury as tending to prove the guilt of the accused. Such circumstance may be attributable to a number of reasons other than consciousness of guilt. *Anderson* v. *Commonwealth*, 100 Va. 860; Wharton's Criminal Evidence, Vol. 2, p. 1494.

In the light of the foregoing we reverse the judgment, set aside the verdict, and award the defendant a new trial.

*Reversed and remanded.*

No. 6996

(State *v.* Thornhill)

Lively, Judge, Upon petition for rehearing.

Was there, in fact, an order directed to be entered by the trial court on December 17, 1930? If so the court made no mistake in entering the *nunc pro tunc* order of October 13, 1931. The original order endorsed for entry appears to have disappeared from the files; and it is urged that there is no proper basis for the entry of the *nunc pro tunc* order, that memory alone is not sufficient to justify its entry. The contents of the lost order, if there was one, is not at issue, for the clerk certifies that the *nunc pro tunc* is the *same* (I presume a copy) that was signed by the judge in vacation December 17, 1930. If the original of the omitted order with the endorsement for entry thereon was produced, there could be no question of the propriety of entering it as "now for then." The paper is lost and its existence, like any other lost paper may be proven. The clerk, a sworn officer of the court, has certified that there was such paper signed by the judge and

inadvertently not spread upon the order book. This fact is not controverted. The judge says he may or may not have signed such order. His statement does not controvert the certificate of the clerk. We think the paper and its contents proved; and there being in fact such paper, it would justify the court in entering it "now for then;" that is on the 13th day of October, 1931 (when the lost paper and its contents was established) as of the date it was directed to be entered, December 17, 1930.

Since the decision to refuse to dismiss the writ of error for failure of the prisoner to preserve his bills of exception by entry of the order, and the decision on the merits, the clerk undertakes to throw doubt upon his certificate above mentioned. The undertaking will not be heard. There must be no trifling with orderly procedure.

*Reversed and remanded.*