LINN MAPEL BRANNON v. JOHN B. PERKEY *et al.*

(No. 9576)

Submitted September 26, 1944. Decided October 17, 1944.

*Herbert M. Blair,* for plaintiffs in error.
*Haymond Maxwell,* for defendant in error.

LOVINS, JUDGE:

This writ of error calls for answers to two questions: Was relator, Linn Mapel Brannon elected to the office of city attorney of The City of Weston? If so elected, did he take the oath of office and file the bond required by the charter of said city in the manner and within the time prescribed by law?

An election was held in The City of Weston on June 1, 1943, for the purpose of electing municipal officers for said city. The charter provides for the election of a city attorney, but no person was nominated for that office. The ballots carried the names of certain persons who apparently had been nominated for election to the various municipal offices on the Democratic and Republican tickets, but no one having been nominated on either ticket for the office of city attorney, blank spaces were provided in each column of the ballot.

Thirteen hundred eighty votes were cast for the two nominees for the office of Mayor, and varying numbers of votes were cast for other municipal officers. Twenty-four voters wrote the name of relator in the blank spaces on the ballots, and the names of seven other persons were also written in the blank spaces on thirteen other ballots. In ascertaining the result of the election the canvassing board certified that relator received twenty-four votes and ignored the other persons whose names had been written on the ballots. However, the seven persons above-

mentioned make no claim to the office of city attorney. The results of the election were canvassed and ascertained on June 7, 1943, but no certificate of result was mailed to the relator and, in fact, no certificates of results were mailed to any person. Relator was informed by the city clerk on June 10, 1943, that he had received the highest number of votes for the office of city attorney, but he neither filed a bond nor attempted to take the oath of office until June 30 following, at which time he appeared before the city clerk of the City of Weston, subscribed to a paper which is in form an oath of office and filed with said clerk a bond in the penalty of one thousand dollars with surety thereon.

The Common Council of The City of Weston at a meeting held on July 6, 1943, entered an order reciting that no person whose name was written on the ballots cast at the last election received more than twenty-seven votes out of a total thirteen hundred eighty votes cast at said election, and also declared that a vacancy existed in the office of city attorney, and reserved the right to fill the same by appointment. The city clerk was directed to notify relator in writing by registered mail of the action of the council as above set forth.

On petition of relator the Judge of the Circuit Court of Lewis County in vacation awarded a rule in mandamus, directed to John B. Perkey, Emma V. Crayton, Pressly M. Sherrard, Hobart W. Pyle, G. Clyde Boram, J. Carl Hinzman, Ira M. Spurgeon, who are the mayor, city clerk and members of the Common Council of the City of Weston, and the City of Weston in its corporate capacity. All respondents, except G. Clyde Boram, who has made no appearance, demurred to the petition, and filed their answer, to which pleading relator demurred. The demurrer of respondents to the petition was overruled and the demurrer of relator to the answer was sustained as to paragraphs V, VI, XVI and XVII of the answer.

Testimony was taken by deposition, from which it appeared that relator was informed by the city clerk as to the number of votes he had received for the office of

city attorney as hereinbefore stated; that relator read the two local newspapers, both of which carried an account purporting to show that relator had received a greater number of votes than any other person for city attorney by the "write in" method.

Upon the foregoing facts the Circuit Court of Lewis County awarded a peremptory writ of mandamus requiring the mayor, the city clerk, and the members of the Common Council of the city of Weston to reconvene as a canvassing board to consider the returns of the municipal election held on June 1, 1943, in so far as said returns pertain to the office of city attorney, and to issue relator a certificate of his election ,to said office, and further commanding the respondents to convene as Common Council and rescind its order entered on July 6, 1943, declaring said office vacant.

Respondents vigorously maintain: (1) That relator was not elected to the office of city attorney of the City of Weston, no nomination for that office having been made, and that the number of ballots on which relator's name was written should be ignored as being so disproportionate to the total number of ballots cast at the general election that there was in law and in fact no election held for the office of city attorney; (2) that even if elected relator failed to take an oath of office and file an official bond within the time prescribed by the charter of the City of Weston; and that by reason of such failure his right to the office no longer exists.

Before discussing the controlling questions we advert to the question of adoption of the provisions of Chapter 8 of the Code, relative to the time of holding municipal elections. We find nothing in the record showing that the Common Council of the City of Weston has adopted the Code provisions above mentioned. It is asserted that an ordinance was passed but the passage and present existence of such ordinance is not established. This proceeding having been commenced in the Circuit Court of Lewis County, we do not take judicial notice of the ordinance of the City of Weston relative to the time of holding munici-

pal elections and the commencement of the terms of office of the elected officials of that municipality. *Boyland* v. *City of Parkersburg*, 78 W. Va. 749, 756, 90 S. E. 347.

If both questions here for decision are affirmatively resolved, the relator has a clear legal right to the relief granted by the trial court; otherwise such right does not exist and the award of the peremptory writ was error. It is provided by the Charter of the City of Weston: "* * * All elections in said city shall be held and conducted, and the results thereof certified, returned and finally determined as nearly as practicable in accordance with the laws in force in this state relating to general elections by the people at the time such election is held; * * * ."

In accordance with the above-quoted statute, we measure the validity and effect of the votes here claimed by relator by the Constitution and pertinent statutes of this State relating to general elections.

The Legislature has provided in detail by primary elections and other methods for the making of nominations for the various officers of the State and its political subdivisions, and by so doing has required certain formalities to be observed by persons who desire their names printed on the official ballot as the nominee of an existing political party or group. Section 12 above quoted, makes no reference to statutes governing primary elections, so that in determining the questions at issue we consider only those statutes which pertain to general elections and which were in effect on the date of the election.

May a voter cast a valid ballot for a person who has not been nominated by one of the statutory methods? The right to vote is not an absolute, natural and inherent right. *Booten* v. *Pinson*, 77 W. Va. 412, 422, 89 S. E. 985; *State* v. *Edwards*, 95 W. Va. 599, 122 S. E. 272. The qualifications of a voter are measured by the provisions of Section 1, Article IV of the Constitution, and cannot be increased or diminished by legislative enactment. *State* v. *Edwards, supra.* A vote shall be cast by ballot. Section 2, Article IV, Constitution. Enactment of laws providing for the registration of voters is enjoined upon the

legislature. Section 12, Article IV, Constitution. No statutory provision relative to general elections has been found which indicates a legislative purpose to require a voter to cast his ballot for persons regularly nominated by primary election or other statutory method. It is our thought that a voter should be left free and untrammeled in selecting the person for whom he casts his vote, and no expression contrary to that position is found in the organic or statutory provisions now in effect in this jurisdiction.

If no nominations are made for a designated office, the board of ballot commissioners is required to provide blank spaces on the ballots of sufficient size that the names of nominees can be printed therein. Code, 3-5-4. A voter may cast a valid ballot by writing the name of the person for whom he desires to vote in the space immediately below the name of an opposing candidate for the same office. Code, 3-5-19 (b) (3), as amended.

It is further provided: "If a voter desires to vote for any person whose name does not appear on the ticket, he may substitute the name by writing it with a black [lead] pencil or other means in the proper place, and making a cross mark in the blank space at the left of the name so written." Code, 3-5-19, as amended. The statutory provision just quoted is a legislative recognition of the right of a voter to select some person other than those nominated for office and whose name is not printed on the ballot. It is unnecessary to the validity of a vote cast that a cross mark appear in the space to the left of the name so written. *Rollyson* v. *Court,* 113 W. Va. 167, 167 S. E. 83. A vote cast by writing in the name of a person must be counted and returned as a vote if the intention of the voter can be ascertained therefrom. *State* v. *Canvassing Board,* 85 W. Va. 440, 102 S. E. 104. See *Reed* v. *State,* 234 Ala. 306, 174 S. 498; *Sanner* v. *Patton,* 155 Ill. 553, 40 N. E. 290; McCrary on Elections, 4th Ed., Sec. 700.

We conclude that a legal voter may cast a ballot for any qualified and eligible person by writing the name of such

person on the official ballot at such place and in a manner that the intention of the voter is indicated as to the person and office for which the vote is cast.

As hereinbefore indicated, only thirty-seven voters out of a total number of thirteen hundred eighty persons actually voting at the general election held on June 1, 1943, for the office of Mayor of the City of Weston, exercised their right of suffrage as to the office of city attorney. Are the thirteen hundred forty-three voters who actually voted in the election for the nominees for the office of mayor but who cast no vote for the office of city attorney to be considered? The failure of voters to exercise their full right of suffrage is the origin of perplexing questions and a diversity of judicial opinion. Should all of the voters who participate in an election but cast no votes for a specific office, be taken into account? Or should only those who actually vote for such office, when the right thereto is in question, be considered? Where voters fail to cast any vote on a special question or proposition submitted to them, although otherwise participating in the election, those who fail to cast votes on the question or proposition will not be taken into account in calculating the number of votes required to answer the question or adopt the proposition. *Davis* v. *Brown,* 46 W. Va. 716, 34 S. E. 839. See *Warden* v. *County Court,* 116 W. Va. 695, 183 S. E. 39. Here thirteen hundred eighty voters actually participating in the election, in so far as the office of Mayor of the City of Weston was concerned, but said voters in the number of thirteen hundred forty-three failed to vote for the election of any person to the office of city attorney.

We have found no specific constitutional or statutory provision applicable to the office of city attorney of the City of Weston providing that either a majority or plurality is necessary to elect to that office. There is, however, a well-established public policy in this State to the effect that a person receiving the highest number of votes for a state office shall be declared elected. Code, 3-5-35.

A voter is not required to vote for every office to be filled at an election. Cooley's Constitutional Limitations, 8th Ed., page 1388. The following quotation is pertinent: "Unless the law under which the election is held expressly requires more, a plurality of the votes cast will be sufficient to elect, notwithstanding these may constitute but a small portion of those who are entitled to vote, * * *." Cooley's Constitutional Limitations, 8th Ed., page 1400. "* * * voters who do not choose to participate in an election are not to be taken into consideration in declaring the result." 9 R. C. L., page 1115. We think the statute requiring a person to be elected to a state office by the highest number of votes cast is a sufficient basis for a rule applicable to the elective offices of the City of Weston and that the highest number of votes actually cast for a person for election to the office of city attorney of that city was a sufficient number to elect him. See Throop on Public Officers, Section 139, page 141.

In the exercise of the right of suffrage a voter is sovereign and has the right to vote or refrain from doing so. If it were otherwise the right would cease to be sovereign. *Kansas City* v. *Whipple,* 136 Mo. 475, 38 S. W. 295. In case a voter goes to an election but does not elect to exercise his full right of suffrage and fails to cast a vote as to any office, such ballot should be treated as a blank vote and not considered or taken into account in ascertaining the result of an election in so far as the same affects the office for which the voter has expressed no choice. Notwithstanding the great disparity between the number of votes cast for the two nominees for mayor and for the persons whose names were written in the blank spaces for the office of city attorney of the City of Weston, we think, and so hold, that the relator was elected to that office, he having received the highest number of votes cast therefor. The voters of the City of Weston who did not cast a vote for any person for the office of city attorney acquiesced in the results of the election for that office. In principle the case of *Davis* v. *Brown, supra,* supports the fore-

going rule. See Am. Jur. Vol. 18, Title Elections, Section 243; 29 C. J. S., Elections, Section 242. The English rule is stated in the case of *Oldknow* v. *Wainwright,* 2 Burrow 1017, Vol. 97, Reprint, 683, 685, wherein it is said: "Whenever electors are present, and do not vote at all, (as they have done here,) 'they virtually acquiesce in the election made by those who do' ". The relator was, therefore, entitled to demand and receive a certificate showing the result of such election as to the office of city attorney, and had he taken an official oath of office and subscribed thereto within the prescribed time the award of a peremptory writ of mandamus inducting him into that office would have been justified. But mandamus will be denied where issuance thereof is unavailing. *Taylor* v. *Board,* 119 W. Va. 378, 193 S. E. 575; *Pardue* v. *County Court,* 105 W. Va. 235, 141 S. E. 874; *State* v. *Board of Education,* 97 W. Va. 431, 125 S. E. 169.

Respondents rely on the failure of relator to take and subscribe to an oath of office and to give an official bond until after more than ten days had elapsed from the date of the election, citing in support of such contention the following provisions of the Charter of the City of Weston:

"Sec. 17. All officers elected and appointed under this act shall each, before entering upon the duties of his office, and within ten days from the time of his election or appointment, give bond required from any officer, take and subscribe an oath to faithfully and impartially discharge the duties of his office, and the oath to support the constitution of the United States, and the constitution of the state of West Virginia. * *:

"Sec. 18. If any one who shall have been duly elected mayor, councilman, or to any other office herein provided for, shall not have been eligible as herein prescribed, or shall refuse or fail to take the oath and give the bond required under this act, within the time prescribed, the council for the time being shall declare his office vacant and proceed to fill said vacancy by appointment as herein provided."

Chapter 90, Acts of the Legislature, 1913. Admittedly the relator did not take and subscribe to such oath until twenty-nine days after the election was held on June 1, 1943. He also failed to give an official bond for a like period. Whether an official bond· is required of the city attorney of Weston we cannot say. Section 16 of Chapter 90, Acts of the Legislature, 1913, gives the council power to "require and take from all those whose duty it is to receive funds, assets or property, or have charge of the same, such bonds, obligations and other writings as they shall deem necessary or proper to insure the faithful performance of their said duties." Section 17, above quoted, imposes upon elected and appointed officers the duty of giving the bond required. It may be that a municipal ordinance requiring the city attorney to give an official bond is now in effect, but this record does not so show, and, as hereinbefore noted, if such ordinance exists that fact must be established by proof. *Boyland* v. *City of Parkersburg, supra.* However, the provisions of the Charter of the City of Weston above quoted plainly require a city attorney to take and subscribe to an oath of office within ten days of his election. It is also clear that if an official bond be required that the giving of such bond is also a prerequisite to entering into and discharging the duties of an elective or appointive office.

In determining whether a statute is mandatory or directory, the legislative intent is dominant and therefore the language used in expressing that intent is a reliable guide. The subject-matter of the statute, its importance and relation to the general object intended to be effected by the act should also be considered. *Nelson* v. *Nash,* 126 W. Va. 568, 29 S. E. 2d 253. The provisions of the Charter of the City of Weston hereinabove quoted are without ambiguity, the language is imperative, positive, and unequivocal, and the legislative intent is clearly expressed. The general object of the entire act is to provide for orderly administration of the affairs of the City of Weston. Officers duly elected or appointed are necessary to accom-

plish that object. An official oath of office is prerequisite to the exercise of authority or the discharge of an official duty. Section 5, Article IV, Constitution. The time for taking and subscribing to an oath of office has been fixed by the legislature, and in order to attain the object and purpose of the act officers elected or appointed thereunder should be diligent and prompt in complying with such requirement. Disregarding any question of filing an official bond, it is clear that the provisions of the Charter of the City of Weston impose a positive and imperative duty on a person elected or appointed to an office in that municipality to take and subscribe an official oath of office within ten days from the time of his election or appointment, and failure of the relator to comply therewith made the provisions of Section 18 applicable. By the latter section the power was given to, and the duty imposed on, the Common Council of the City of Weston to declare the office of city attorney vacant, and, having done so, the right of relator to such office ended.

Relator having failed to show a clear right to the office into which he seeks induction, is not entitled to a peremptory writ. The judgment of the Circuit Court of Lewis County awarding such writ was error.

For reasons herein stated the judgment of the Circuit Court of Lewis County is reversed and this proceeding is remanded to that court with directions that the same be dismissed.

*Reversed and remanded with directions.*