Charles W. McCoy, Defendant In Error
D. W. Riddle, Plaintiff In Error

*v.*

Frank Fisher, *et al., etc.,* Defendants In Error

(No. 10402)

*and*

Henry Posey, Defendant In Error
E. C. Heater, Plaintiff In Error

*v.*

Frank Fisher, *et al., etc.,* Defendants In Error

(No. 10403)

Submitted September 11, 1951. Decided November 27, 1951.

*William M. Kidd,* for plaintiffs in error.

*E. Oldham Berry,* for defendants in error.

HAYMOND, JUDGE:

These two writs of error were granted upon the separate application of D. W. Riddle to the final judgment of the Circuit Court of Braxton County dated April 20, 1951, but actually entered May 3, 1951, in a proceeding in mandamus instituted in that court by Charles W. McCoy, as petitioner, against Frank Fisher, Jesse P. James and John S. Perrine, Commissioners of the County Court of

Braxton County, as defendants, and the separate application of E. C. Heater to the final judgment likewise dated April 20, 1951, but actually entered May 3, 1951, in a certiorari proceeding instituted in that court by Henry Posey, as petitioner, against Frank Fisher, Jesse P. James and John S. Perrine, Commissioners of the County Court of Braxton County, as defendants. Both proceedings in the Circuit Court of Braxton County present the same questions of law and, by agreement of the parties and by leave of this Court, they were argued and submitted together and will be dealt with in one opinion.

In the mandamus proceeding the petitioner, McCoy, contending that he had been duly elected to the office of justice of the peace of Salt Lick District in that county, at the general election held November 7, 1950, to fill a vacancy in that office, by the final judgment of the court, was awarded a writ of mandamus which required the defendants to permit him to qualify for the office to which he claimed to have been elected. In that proceeding it appeared that the result of the election was ascertained by the board of canvassers and that a certificate of the result of the election, which showed that McCoy had received twenty votes written on the official ballots for the office of justice of the peace, was issued to the petitioner, McCoy, by a majority of the board. In the certiorari proceeding the petitioner, Posey, contending that he had been duly elected to the office of constable of Salt Lick District in that county, at the general election held November 7, 1950, to fill a vacancy in that office, was granted the relief for which he prayed, and by the final judgment of the court, the defendants were ordered to permit the petitioner to qualify for the office to which he claimed to have been elected. In that proceeding it appeared that the result of the election was ascertained by the board of canvassers and that a certificate of the result of the election, which showed that Posey had received eight votes written on the official ballots for the office of constable, was issued to the petitioner, Posey, by a majority of the board. After the decision of the circuit court had evidently been announced in each proceeding on April

20, 1951, but before the entry of the final judgment, on May 3, 1951, D. W. Riddle, who had been appointed to the office of justice of the peace prior to the general election in 1950, presented his petition as intervenor asking to be made a party and seeking certain relief in the mandamus proceeding and E. C. Heater, who had likewise been appointed to the office of constable prior to the general election in 1950, also presented his petition as intervenor asking to be made a party and seeking the same character of relief in the certiorari proceeding. The petition in each proceeding was rejected by the court as shown by a notation on each petition that: "it had been considered by the Court and intervention refused."

Each of the petitions presented by Riddle and Heater, by which each of them sought to intervene in the respective proceedings in mandamus and in certiorari, charged in substance that the petitioner had been appointed in 1950 to the office claimed by him for a term to expire upon the election and the qualification of a person to succeed him in such office; that at the primary election, held in the month of August, 1950, and at the general election, held on November 7, 1950, there was no candidate for such office; that there was no notice of any kind or character given that persons would vote for that office at that election; that no space was provided on the official ballot for the purpose of voting for persons for such office; that at the general election in November, 1950, only a small number of persons in Salt Lick District wrote the name of the person who now claims to have been elected upon the ballots cast for the office in question; that these votes did not constitute a legal election of such person to the office; and that the petitioner is entitled to hold the office to which he was appointed until a successor is duly and legally elected and qualified to succeed him.

By their assignments of error, the petitioners Riddle and Heater contend (1) that the petitions, having been presented before the entry of the final judgment in each proceeding, should not have been rejected; (2) that the

petitioner in each instance should have been permitted to intervene and be heard as a party in each proceeding; (3) that the petitioner in each instance is entitled to hold the office to which he had been appointed until his successor is legally elected and qualified; and (4) that the persons who claim to have been elected to succeed the petitioner in each office were not legally elected at such election.

In opposition to the foregoing contentions of the petitioners Riddle and Heater, McCoy and Posey, the respective petitioners in the proceedings in mandamus and in certiorari, to sustain the final judgments of the circuit court in those proceedings, insist (1) that the petitions of Riddle and Heater, though tendered just before the entry of the final order in each proceeding on May 3, 1951, were not presented until after the final judgment, which was effective as of April 20, 1951; and, in consequence, were tendered too late for filing; and (2) that the petitions of Riddle and Heater are insufficient to entitle them to the relief for which they pray, and, for that reason, the petitions were properly rejected by the circuit court.

The conflicting contentions of the respective parties present for decision two principal questions: (1) whether the order dated April 20, 1951, but not entered until May 3, 1951, was retroactive to April 20, 1951, and, as a valid order nunc pro tunc, constituted the entry of a final judgment before the tender of the petition in each proceeding; and (2) whether the petition, in each proceeding, if tendered before final judgment, was legally sufficient to entitle the petitioner to the relief for which he prayed.

From the above recited facts, which appear from the record, it is clear that the final order, dated April 20, 1951, but which was not actually entered until May 3, 1951, in each proceeding, is not an order nunc pro tunc. Instead it is merely an order bearing an incorrect date which was prior to the day on which the order was in fact entered. With respect to an order nunc pro tunc, the rule recognized or applied by this Court in its decisions is that an order nunc pro tunc can only be entered where

the intent to enter an order in the first instance is shown by some entry or memorandum upon the records or the quasi records of the court. *Monongahela Railway Company* v. *Wilson,* 122 W. Va. 467, 10 S. E. 2d 795; *Stannard Supply Company* v. *Delmar Company,* 110 W. Va, 560, 158 S. E. 907. An order can be entered nunc pro tunc to make a record of something previously done by a court as to which an order was not then entered, but when the court has wholly omitted to make an order, which it might or ought to have made, such order can not afterward be entered nunc pro tunc. *Payne* v. *Riggs,* 80 W. Va. 57, 92 S. E. 133; *State* v. *Wooldridge,* 129 W.Va. 448, 40 S.E. 2d 899; *State* v. *Thornhill,* 111 W. Va. 258, 161 S. E. 431; *Vance* v. *Ravenswood, S. and G. Railway Company,* 53 W. Va. 338, 44 S. E. 461. As the record in each proceeding does not disclose the existence of any memorandum or other entry or notation upon the record of the court which shows any intent to enter it as of April 20, 1951, other than the incorrect date noted on the order actually entered May 3, 1951, that order was not entered nunc pro tunc, had no retroactive operation or effect, and was effective only from and after May 3, 1951, the day of its actual entry of record.

The petitioners Riddle and Heater rely upon Section 34, Article 4, Chapter 56, Code, 1931, in support of their contention that the petition of each was filed in each proceeding in the circuit court before the expiration of the time within which the petitions could be filed under the statute. The pertinent provisions of that statute are set forth in these terms: "Whenever in any case full justice can not be done and a complete and final determination of the controversy can not be had without the presence of other parties, and such nonjoinder shall be made to appear by affidavit or otherwise at any time before final judgment or decree, the court of its own accord, or upon motion, may cause such omitted persons to be made parties to the action or suit, as plaintiffs or defendants, by proper amendment and process, at any stage of the cause, as the ends of justice may require, and upon such terms

as may appear to the court to be just; * * *." As the petitions were presented on May 3, 1951, shortly before the entry of the final judgment on the same day in each proceeding, they were tendered within the time permitted by the statute and, if they are legally sufficient and allege facts which, if established by proof, would entitle the petitioners to the relief for which they pray, the petitions should not have been rejected by the court on the ground that they had not been tendered in time.

In view of the situation just referred to, it is necessary to determine the legal sufficiency of the allegations of the rejected petitions. As already pointed out, the petitions allege in substance that the election of McCoy and Posey, to the offices now claimed by each of them respectively, was illegal and void on the grounds that neither of them nor any other person was a candidate for either office at the general election in November, 1950, that no notice of any kind or character was given that persons would vote for any one for either office at that election, that no space was provided on the official ballot to enable a voter to vote for any persons for either office, that only a small number of persons in Salt Lick District wrote the names of McCoy and Posey upon the ballots cast for the offices in question, and that those votes did not constitute a legal election of McCoy or Posey to the office now claimed by either of them. The petitions charge that, for the foregoing reasons, the petitioner in each instance is entitled to hold the office to which he was appointed until a successor is duly and legally elected and qualified to succeed him, and that no such successor has been so elected.

Article IV, Section 7, of the Constitution of this State contains these provisions: "The general elections of State and county officers, and of members of the Legislature, shall be held on the Tuesday next after the first Monday in November, until otherwise provided by law. The terms of such officers, not elected, or appointed to fill a vacancy, shall, unless herein otherwise provided, begin, on the first day of January; and of the members of the Leg-

islature, on the first day of December next succeeding their election. Elections to fill vacancies, shall be for the unexpired term. When vacancies occur prior to any general election, they shall be filled by appointments, in such manner as may be prescribed herein, or by general law, which appointments shall expire at such time after the next general election as the person so elected to fill such vacancy shall be qualified."

Section 2, Article 1, Chapter 3, Code, 1931, enacted in pursuance of Article IV, Section 7, of the Constitution, declares that "General elections shall be held at the voting places in the several election precincts in the State on the Tuesday next after the first Monday in November, in each even year." The statute just quoted is mandatory in character and a general election held on a day other than that provided by the statute is void, unless it is required to be held on a different day by order of a court of competent jurisdiction. *State ex rel. Lorentz* v. *Pierson,* 86 W. Va. 533, 103 S. E. 671.

Section 1 and part of Section 8, Article 10, Chapter 3, Code, 1931, relating to vacancies in office, are expressed in these terms:

Section 1: "Elections to fill vacancies shall be for the unexpired term, and shall be held at the same places, and superintended, conducted and returned, and the result ascertained, certified and declared, in the same manner, and by the same officers, as in general elections; and the persons elected, having first duly qualified, shall enter upon the duties of their respective offices."

Section 8: "Any vacancy in the office of a county court commissioner, clerk of the county court, justice or constable, shall be filled by the county court of the county, unless the number of vacancies in a county court deprive that body of a quorum, in which case the governor of the State shall fill any vacancy in such county court necessary to create a quorum thereof, until the next general election, at which election every such va-

cancy shall be filled by election for the unexpired term: * * *".

Under the above quoted constitutional and statutory provisions, it is clear that the appointment by the county court of Riddle to the office of justice of the peace to fill a vacancy in that office and the appointment by the county court of Heater to the office of constable to fill a vacancy in that office continued in force and effect only until the next general election and until such time after that election as the person elected to fill the vacancy shall be qualified, *State ex rel. Harmon* v. *Board of Canvassers,* 87 W. Va. 472, 105 S. E. 695; and that the next general election following their appointments was required by law to be held on November 7, 1950. When the time of a general election is fixed by law and vacancies are required to be filled at the next general election after an appointment to fill a vacancy until that time, persons qualified to vote at such election are charged by law with knowledge of the time of the general election and that vacancies in office are to be filled at such election. *Griffith* v. *County Court of Mercer County,* 80 W. Va. 410, 92 S. E. 676; 18 Am. Jur., Elections, Section 106; 29 C. J. S., Elections, Section 72.

As to the requirement that notice be given of the holding of an election there is a clear distinction between the case of a vacancy which is to be filled at a special election at a time and a place to be fixed by some officer or tribunal authorized by statute to call such special election, and the case in which statutory provisions require a vacancy to be filled at the next general election after the vacancies occurred. *Griffith* v. *County Court of Mercer County,* 80 W. Va. 410, 92 S. E. 676. In the *Griffith* case, the general rule with respect to a statutory requirement that a vacancy must be filled at the next following general election is stated in this language: "The general rule in such case, sustained by the great weight of authority, is, that where the statute itself provides, as it does in this state, for filling vacancies at the next general election, and requires notice thereof to be published, the

failure to publish the notice will not affect the validity of the election."

With regard to the general rule, the well recognized distinction between special elections and general elections, and the effect upon the validity of an election of failure to give the notice required by statute, the text in 18 Am. Jur., Elections, Section 106, uses this language: "The calling of an election ordinarily includes the giving of some notice, and it is a common practice to direct by statute both the manner and the time of giving notice of all elections—those fixed at regular recurring intervals as well as special elections called for particular occasions or purposes. There is, however, a difference in the necessity for notice in the two classes of elections, and this difference has been recognized by the courts in passing upon questions arising from a failure to comply with the requirements of the law. As to general elections it is established that the fixing of the time for the election either by law or by the Constitution is in itself notice which all electors must heed; and hence, where an officer is charged with the duty of giving notice of such an election or with the issuing of a proclamation thereof, his failure to perform his duty will not invalidate the election. Such special provision for notice is held to be only a reminder to electors of what the law has already provided. It is directory merely, not mandatory, and is in no way connected with the elector's right to the elective franchise; it is not a condition precedent to the exercise of the right. Where, on the other hand, the time for holding an election is not prescribed by law, but is fixed by the officer or body vested with authority to call it, the voters cannot be expected to have or to take notice thereof unless notice is given or a proclamation issued. Accordingly, a requirement to this effect must be considered as mandatory and its performance essential to the validity of the election. It would seem proper to apply the same rule when the special election is held at the same time as a general election, although this conclusion is not undisputed." Though some authorities state that elections to fill vacan-

cies are special elections, 18 Am. Jur., Elections, Section 107; *People ex rel. Anderson* v. *Czarnecki,* 312 Ill. 271, 143 N. E. 840; in this jurisdiction, by virtue of the statute, Section 8, Article 10, Chapter 3, Code, 1931, which requires a vacancy in the offices of justice of the peace and constable to be filled at a general election, an election to fill such vacancy is a general election within the meaning of the statute.

In the *Griffith* case this Court held that the failure of the county court to give notice of an election to fill a vacancy in the office of Commissioner of the County Court as required by the above quoted statutory provision which now appears in Section 8, Article 10, Chapter 3, Code, 1931, did not void the election of candidates for the office who were regularly nominated at a primary election and were voted for at the general election by the great body of voters. Though the prior nominations of the candidates and the large number of votes cast at the election involved in that case were emphasized by this Court, it is reasonably clear that the holding that the election was not invalidated by the failure to give the notice required by the statute was not based entirely upon the prior nominations of the candidates and the size of the votes cast at the election. However that may be, the holding of this Court in the later case of *Brannon* v. *Perkey,* 127 W. Va. 103, 31 S. E. 2d 898, 158 A. L. R. 631, that when no nomination has been made for an elective office to be filled at a municipal election to which the general election laws of the State are applicable and only a small number of the voters who otherwise participated in the election vote for eligible and qualified persons on official ballots for a designated office, a person who receives the greatest number of the few votes cast is duly elected to such office, strongly indicates that the circumstances, existing in the *Griffith* case, that the person voted for was a candidate for the office and that, though he received only a small number of votes, a large number of votes were cast for other candidates at the election, can not be considered as con-

ditions essential to the validity of the election of a person who, not being a candidate, received the highest number of the few votes cast for the office, at a general election with respect to which the statutory provision requiring notice was not complied with or fulfilled. As to the character of statutory provisions requiring notice in the case of a general election when the time and the place of the holding of such election are fixed by law, the text in 29 C. J. S., Elections, Section 72, is in these words: "Where, as in the case of general elections, the time and place of holding the same are fixed by the law itself, statutory provisions as to notice are considered as merely directory inasmuch as electors are bound to take notice of the law, and hence a general election held at the time and place appointed by law is not invalid because no further notice thereof was given."

In view of the constitutional and statutory provisions, the texts, and the cases, quoted, referred to and cited, it is clear that the failure of the county court to publish the notice that the vacancies in the offices of justice of the peace and constable in Salt Lick District would be filled at the general election in November, 1950, as required by Section 8, Article 10, Chapter 3, Code, 1931, did not invalidate the election of McCoy and Posey to the offices of justice and constable, respectively, at that election, and that the election of each of them may not be vacated for that reason.

The contention of the petitioners, Riddle and Heater, that the election of McCoy and Posey is invalid because no space was provided on the official ballots to enable a voter to vote for any persons for the office of justice of the peace and constable, is not well founded. Though Section 4, Article 5, Chapter 3, Code, 1931, dealing with form and arrangement of ballots for use at an election, in part provides that "If, upon any ticket there be no candidate or candidates for a designated office, a blank space equal to the space that would be occupied by such name or names, if they were printed thereon, with the blank space herein provided for, shall be left.", the fail-

ure of the officials charged with the duty of preparing the ballots did not impair the right of any qualified voter to vote for a person whose name did not appear upon the ballot as a candidate for any designated office, or affect the result of the election. The omission of the space from the ballots used at the general election in Salt Lick District in November, 1950, is merely a slight mistake or technical irregularity and, as it did not deprive the voters of any right or affect the result of the election with respect to the various candidates, the provision of the statute, in its application to the election, should be considered as directory rather than mandatory in character and effect. The omission of the space from the ballots did not prevent the twenty persons who voted for McCoy or the eight persons who voted for Posey from so doing by writing their names upon the ballots or prevent the other persons entitled to vote at the election, who presumably voted in large numbers for the candidates for the offices whose names appeared upon the official ballot and who were charged by law with notice that the vacancies in the offices of justice of the peace and constable should then be filled, from voting for McCoy or Posey, or for any other person, for either office, if they had desired to do so; and all of them had the same opportunity to vote for any person whom they wished or intended to elect to either office.

In discussing generally the subject of irregularities in the conduct of elections caused by the failure of election officers to comply with the provisions of applicable statutes, 18 Am. Jur., Elections, Section 225, contains these provisions: "The failure of election officers to obey the mandatory provisions of a statute relating to the conduct of the election and designed to secure the secrecy and integrity of the ballot may so taint the votes with irregularity as to cause the rejection of the entire vote of the district. It should be remembered, however, that all statutes tending to limit the citizen in the exercise of the right of suffrage are to be construed liberally in his favor, and that the courts are loath to disfranchise voters who are

wholly innocent of wrongdoing. As a consequence, it is a firmly established general rule that votes will not be rejected, even though election officers fail to comply with the directory provisions of a statute, if there is no fraud or other irregularity and the failure to comply is unintentional; nor is it material in this connection that the failure of the election officers to perform their duty subjects them to penalties. Likewise, the courts will not permit the will of the voters to be defeated by fraud on the part of election officers if it is possible to avoid such a result. In short, a fair election and an honest return should be considered as paramount in importance to minor requirements which prescribe the formal steps to reach that end, and the law should be so construed as to remedy the evils against which its provisions are directed and at the same time not to disfranchise voters further than is necessary to attain that object. * * *. Nor will an election be set aside because of irregularities on the part of the election officials unless it appears that such irregularities affect the result." In 18 Am. Jur., Elections, Section 206, these statements appear: "Acting pursuant to the power and duty conferred upon them to provide instrumentalities by which elections are to be accomplished, the legislatures of the various states have established elaborate and rigid rules and regulations for the conduct of elections. Before an election, such provisions are generally regarded as mandatory and their observance may be insisted upon and enforced, but after an election, they are regarded in a somewhat different light, and the general rule in such case is that a departure from the mode of holding an election as prescribed by statute, which does not deprive legal voters of their right to vote or permit illegal voters to participate in the election or cast uncertainty on the result, does not affect the validity of the election, unless the statute expressly declares that the particular act is essential to the validity of an election or that its omission shall render the election void or unless there is a violation of a constitutional requirement."

With reference to the general rule that technical errors

by election officials in preparing the official ballot will not void the ballot or invalidate the election, 29 C. J. S., Elections, Section 173, uses this language: "Technical errors on the part of an officer charged with the preparation of official ballots will not destroy the efficacy of the ballots nor invalidate the election, unless the statute expressly makes the specified irregularity fatal, unless it appears that the mistakes in fact have operated to prevent a free, fair and honest election, or unless the duty not performed was mandatory." Courts will not permit the will of the voters to be defeated by the failure of officials to observe technicalities in the conduct of elections. 20 C. J. 152; *People ex rel. Woods* v. *Green*, 265 Ill. 39, 106 N. E. 504, Ann. Cas. 1916A, 707.

When a statute declares a particular defect or irregularity in an election ballot to be fatal the courts will enforce the statutory command regardless of their views of the importance of the requirement. *Oncken* v. *Ewing*, 336 Pa. 43, 8 A. 2d 402. When, however, a statute provides that certain things shall be done in connection with the preparation of an election ballot, but does not prescribe what results shall follow if they are not done, the statute is merely directory, and the test of the legality of a ballot is whether the voters were given an opportunity to express their will and fairly expressed it. 20 C. J. 152; 29 C. J. S., Elections, Section 173; *Horsefall* v. *School District, City of Salem,* 143 Mo. Ap. 541, 128 S. W. 33; *People ex rel. Woods* v. *Green,* 265 Ill. 39, 106 N. E. 504, Ann. Cas. 1916A, 707; *Oncken* v. *Ewing,* 336 Pa. 43, 8 A. 2d 402. As the provision of Section 4, Article 5, Chapter 3, Code, 1931, that "If, upon any ticket, there be no candidate or candidates for a designated office, a blank space equal to the space that would be occupied by such name or names, if they were printed thereon, with the blank space herein provided for, shall be left.", does not expressly state or plainly imply that the omission of such space from an election ballot shall render such ballot illegal and void, or that it shall not be counted, that provision of the section is not mandatory but directory in character and effect; and the omission of the blank

462

space dealt with by the statute, resulting from the failure of officials, charged with the duty of providing such space, to perform that duty, does not destroy the efficacy of such ballot. Though *Morris* v. *Board of Canvassers,* 49 W. Va. 251, 38 S. E. 500, and *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690, decided in 1901, held that certain provisions of an earlier statute, Section 34, Chapter 3, Code, 1899, prescribing the form of election ballots and the manner of their use by the electors, which required a voter to use only one of the ballots on an election ballot sheet, were mandatory rather than directory in character, and that a ballot not so used could not be counted, those cases do not apply to the above quoted provision of the present statute and are thus distinguishable from the case at hand with respect to its character and effect. The earlier statute, which did not contain the quoted provision of the present statute, has been amended and several of its provisions superseded since the decisions in the *Morris* and the *Daniel* cases, by the statute as it now appears in Section 4, Article 5, Chapter 3, Code, 1931, and the nature of the provisions which those cases held were mandatory is substantially different from that of the statutory provision here under consideration. The difference between them clearly appears from point two of the syllabus in the *Morris* case which holds that "As to mistakes and irregularities in elections, a distinction exists between those made by the voter and those made by officers of election. In the former case such mistakes and irregularities may often destroy the ballot, while those of officers do not affect the election, if a fair election has been held." There is no indication, or contention by any of the parties involved in the general election of November 7, 1950, that such election was not fairly held or that any fraud or dishonesty occurred or existed in connection with the manner in which it was conducted.

In *Williamson* v. *Musick,* 60 W. Va. 59, 53 S. E. 706, this Court held in point four of the syllabus that "Irregularities in the conduct of an election are generally to be disregarded, unless the statute declares that they shall be

fatal to the election, or unless they are such in themselves as to change, or to render it impossible to ascertain, the result." In *Norton* v. *Kanawha County Court,* 79 W. Va. 432, 91 S. E. 258, in considering the effect of an error affecting the identity of a candidate on an official ballot at an election, this Court held in point three of the syllabus that "Slight errors or irregularities on the part of one charged with the duty of preparing official election ballots will not be permitted to defeat the real intention of the voter, if such intention may be determined with reasonable certainty from the ballot cast by him in the light of the surrounding circumstances." In the opinion in the *Norton* case, this Court said: "Mere irregularities or slight errors on the part of an officer charged with the preparation of official ballots will not destroy the efficacy of the ballots, nor invalidate the election. 15 Cyc. 352. The negligent or unauthorized act of the officer whose duty requires him to print the ballots as they are certified to him by the proper authority will not deprive the elector of the right to cast his ballot and to have the same counted for the candidate of his choice, nor the successful candidate to enjoy the benefits and perform the duties of the office."

Under the foregoing authorities the omission of the space which should have been provided for an office for which the name of no person appeared as a candidate on the ballots used in the general election in Salt Lick District in November, 1950, is a mere mistake or irregularity of officials charged with the duty of conducting the election and, not being caused or preventable by the voters, does not destroy the efficacy of such ballots or render the election invalid.

The law is well settled in this State that in selecting a person for any office, state, county or municipal, a qualified voter may cast his ballot for a person whose name does not appear as a candidate on the official ballot at an election. *Brown* v. *Carr,* 130 W. Va. 455, 43 S. E. 2d 401; *Brannon* v. *Perkey,* 127 W. Va. 103, 31 S. E. 2d 898, 158 A. L. R. 631; *State ex rel. Kincaide* v. *Canvassing Board,*

85 W. Va. 440, 102 S. E. 104. In *Brannon* v. *Perkey*, 127 W. Va. 103, 31 S. E. 2d 898, 158 A. L. R. 631, in sustaining the validity of the election of a person, not a candidate, to the office of city attorney to be filled at a municipal election at which only thirty seven persons, out of a total number of thirteen hundred and eighty persons voting for a candidate for another office participated, voted for such person for the office of city attorney, by writing his name on official ballots on which the name of no person as a candidate for that office appeared, this Court held in point one of the syllabus that "Where no nomination has been made for an elective office to be filled at a municipal election to which the general election laws of the State are applicable, and only a small number of voters, who otherwise participated in said election, write the names of eligible and qualified persons on official ballots so as to show an intention to cast a vote for the named persons and the designated office, the person whose name is so written on the greatest number of ballots voted is duly elected to such office." In the opinion in the *Brannon* case, this Court used this language:

"If no nominations are made for a designated office, the board of ballot commissioners is required to provide blank spaces on the ballots of sufficient size that the names of nominees can be printed therein. Code, 3-5-4. A voter may cast a valid ballot by writing the name of the person for whom he desires to vote in the space immediately below the name of an opposing candidate for the same office. Code, 3-5-19 (b) (3), as amended.

"It is further provided: 'If a voter desires to vote for any person whose name does not appear on the ticket, he may substitute the name by writing it with a black [lead] pencil or other means in the proper place, and making a cross mark in the blank space at the left of the name so written.' Code, 3-5-19, as amended. The statutory provision just quoted is a legislative recognition of the right of a voter to select some person other than those nominated for office and whose name is not printed on the ballot. It is unnecessary to the validity of a vote cast

that a cross mark appear in the space to the left of the name so written. *Rollyson* v. *Court*, 113 W. Va. 167, 167 S. E. 83. A vote cast by writing in the name of a person must be counted and returned as a vote if the intention of the voter can be ascertained therefrom. *State* v. *Canvassing Board*, 85 W. Va. 440, 102 S. E. 104. See *Reed* v. *State*, 234 Ala. 306, 174 S. 498; *Sanner* v. *Patton*, 115 Ill. 553, 40 N. E. 290; McCrary on Elections, 4th Ed., Sec. 700.

"We conclude that a legal voter may cast a ballot for any qualified and eligible person by writing the name of such person on the official ballot at such place and in a manner that the intention of the voter is indicated as to the person and office for which the vote is cast."

For the reasons stated, the allegations of the petitions tendered by Riddle and Heater do not set forth sufficient facts upon which to base a valid claim by either of them to the office which each of them seeks to hold upon the theory that each is entitled to do so until his successor is legally elected and qualified. In consequence, the petitions are not sufficient in law and each petition, though seasonably tendered for filing, was properly rejected by the circuit court.

The judgment of the Circuit Court of Braxton County in each proceeding is affirmed.

*Affirmed.*